IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 15, 2004

## STATE OF TENNESSEE v. TERRELL DEBERRY AND DAMIEN LASHAWN NIXON, A/K/A "SKINNY"

Appeal from the Circuit Court for Lauderdale County
No. 7433    Joseph H. Walker, III, Judge

No. W2004-00018-CCA-R3-CD  - Filed December 7, 2004

The defendant Terrell Deberry was indicted for possession with intent to deliver .5 grams or more of cocaine. The defendant Damien Nixon was also indicted for possession with intent to deliver .5 grams or more of cocaine and for driving on a revoked license. After granting a motion to suppress the cocaine found in the possession of defendant Deberry, the trial court permitted the state an application for a discretionary appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. Later, the state determined that because the substantive effect of the trial court's ruling resulted in dismissal of the charges against each defendant, the more appropriate appellate remedy was under Rule 3 of the Tennessee Rules of Appellate Procedure. This court granted the motion to accept the appeal under Rule 3 and waived the timely filing of notice of appeal by the state. The issue presented for review is whether the trial court erred by granting the motion to suppress. Because the evidence was properly suppressed, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**; **Dismissed in Part**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellant, State of Tennessee.

Gary F. Antrican, District Public Defender, for the appellee, Terrell Deberry.

Rebecca S. Mills, Ripley, Tennessee, for the appellee, Damien Nixon.

**OPINION**

At approximately 6:36 p.m., on January 31, 2003, Halls Police Officer Kevin Brogdon stopped a red Mitsubishi which was being driven without either headlights or taillights. When Officer Brogdon approached the driver's side window, he recognized the defendant Damien Nixon.

After confirming that Nixon's license had been revoked, the officer ordered him out of the car, arrested him, and placed him in the back of his police cruiser. By that time, at least two other police officers were present at the scene. Officer Brogdon then returned to the vehicle and asked Deberry, a passenger, to step out. After seeking permission, the officer performed a pat-down for weapons. When he found none, he conducted a more extensive search, lifted Deberry's shirt, and ultimately found a bag of drugs in his waistband. A search of the car yielded no other illegal substances. Each defendant was taken to the jail, advised of his Miranda rights, and questioned by police. Special Agent Danny Wilson of the Tennessee Bureau of Investigation assisted with the questioning of each defendant.

At the suppression hearing, Officer Brogdon testified that he asked Deberry to step out of the car and opened the door for Deberry as he did so. Officer Brogdon recalled asking Deberry if he had anything such as narcotics or weapons in his possession, to which Deberry replied, "No." According to the officer, he then asked whether Deberry had any objection to a personal search, to which Deberry answered in the negative. Officer Brogdon recalled then patting down Deberry from head to foot and finding no weapons. Officer Brogdon testified that afterward, he made a more extensive search by reaching into Deberry's pockets, where he found an unopened cigar. Finally, Officer Brogdon intensified his search, lifted up the defendant's shirt, and found the bag of illegal drugs. The officer acknowledged that there were no drugs in the car, no scent of drugs there and no weapons.

Deberry testified that when he stepped out of the car, Officer Brogdon was standing right in front of him, blocking his path. He remembered that there were also at least two other police cars at the scene and several other officers. While Deberry could not remember the exact words the officer used before initiating the search, he explained that he consented to a pat-down only because he was frightened and believed the officer intended to search him anyway.

At the conclusion of the hearing on the motion to suppress, the trial court determined that there were sufficient grounds for the officers to stop the car and place the driver, Nixon, under arrest. It ruled that the statement of the defendant Nixon was freely and voluntarily given. The trial court also held, however, that under these particular circumstances, involving a traffic offense by the driver, "there was no reasonable basis for the officer to request the passenger get out of the car and submit to a search." Further, it concluded that "there was no legal basis to disrobe the defendant Deberry."

The state initially sought permission to appeal from the trial court under Tennessee Rule of Appellate Procedure 9, contending that the prosecution could not proceed unless the trial court's suppression of the drugs was erroneous. The trial court granted permission to appeal on October 27, 2003. Because, however, the order was not presented to the Attorney General's Office in time (within 10 days of the order) for a Rule 9 appeal, the state chose to proceed under Rule 3. Its rationale was that the substantive effect of the trial court's order of suppression of the drugs was a dismissal of the indictment. See State v. Phillips, 30 S.W.3d 372, 373 n.1 (Tenn. Crim. App. 2000)

(noting when a suppression order relates to seized drugs, the State ordinarily files a Rule 3 appeal as of right).

In this appeal, the state argues that Officer Brogdon properly asked the passenger, Deberry, to step out of the car following the custodial arrest of the driver because the officer's search of the vehicle incident to arrest could not effectively proceed if Deberry remained inside. Further, the state argues that officers may order passengers out of a vehicle incident to a lawful traffic stop. In addition, the state claims that because defendant Deberry gave consent, the search was not limited to a pat-down for weapons as regulated by Terry v. Ohio, 392 U.S. 1, 27-28 (1968). Although the trial court did not reach the question of the voluntariness of Deberry's consent to search, the state insists that he voluntarily consented to the full search. Finally, the state argues that even if the trial court properly suppressed the evidence against Deberry, Nixon does not have standing to challenge the admission of the cocaine as to his prosecution.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); Terry, 392 U.S. at 1. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution. Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990); Delaware v. Prouse, 440 U.S. 648, 653 (1979); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994); State v. Westbrooks, 594 S.W.2d 741, 743 (Tenn. Crim. App. 1979). The fact that the detention may be brief and limited in scope does not alter that fact. Prouse, 440 U.S. at 653; State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); Binion, 900 S.W.2d at 705; Westbrooks, 594 S.W.2d at 743. The basic question, as indicated, is whether the seizure was "reasonable." Binion, 900 S.W.2d at 705 (citing Sitz, 496 U.S. at 444). In Pulley, our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." 863 S.W.2d at 30.

Our determination of the reasonableness of a stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Prouse, 440 U.S. at 663; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The scope of review is limited when the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In United States v. Drayton, 536 U.S. 194, 201-02 (2002), the Supreme Court determined that there is no Fourth Amendment violation when an officer simply approaches a person in a public place and poses a question. Even when there is no basis to suspect a crime, officers may ask questions, ask for identification, and ask for consent to conduct a search, so long as the means used

to induce the cooperation are not coercive. Id.; see Daniel, 12 S.W.3d at 425. A reviewing court must examine "all the circumstances surrounding the encounter" in determining whether the law enforcement conduct would have indicated a lack of freedom "to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. As indicated, the subjective intent of the officer is not controlling. State v. Johnson, 980 S.W.2d 414 (Tenn. Crim. App. 1998).

Here, the trial court found that Officer Brogdon had a reasonable basis to stop Nixon's vehicle. Because the vehicle was being operated at night with its lights off, the officer had reasonable suspicion to believe a misdemeanor was being committed. The trial court also concluded that the officer had a basis to arrest Nixon. It determined that Officer Brogdon then approached the passenger side door, asked Deberry to step outside, and Deberry complied. Implicit in the finding of the trial court is that it was the legitimate objective of the officer to assure his own safety as to the passenger, who was not a suspect as to the traffic violation. The testimony was in dispute as to what the officer actually said to Deberry and the trial court made no finding as to whether Deberry consented to the officer's request to remove himself from the vehicle. However, nothing in the record indicates that Deberry objected to exiting the vehicle. While determining that the officer had no basis to ask Deberry to step out of the vehicle, the trial court did accredit the testimony of Deberry to the extent that his consent to any search was limited to a pat-down, which was appropriate for a weapons check. It also ruled that when the officer completed the pat-down without discovering any weapons, he had no authority to make a more intrusive search, i.e., to "disrobe" Deberry by taking off his clothes or by removing his shirt, and that the officer would not otherwise have found the cocaine. It was on this basis that the trial court ordered suppression.

It is well settled that a search conducted pursuant to a voluntary consent is an exception to the requirement that all searches and seizures be conducted pursuant to a warrant. State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). "To pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The following factors are used to evaluate the voluntariness of the consent:

(1) whether the defendant is in custody;

(2) the length of detention prior to the giving of consent;

(3) the presence of coercive police procedures;

(4) the defendant's awareness of the right to refuse to consent;

(5) the defendant's age, education and intelligence;

(6) whether the defendant understands his constitutional rights;

(7) the extent of the defendant's prior experience with law enforcement; and

(8) whether the defendant was injured, intoxicated, or in ill health.

See, e.g., State v. Carter, 16 S.W.3d 762, 769 (Tenn. 2000). The state must show "more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). The trial court's finding that a search is or is not consensual, however, will not be overturned unless the evidence preponderates against the ruling. Brady v. State, 584 S.W.2d 245, 251-52 (Tenn. Crim. App. 1979).

In its order of suppression, the trial court made no mention of the presence of at least three other officers who had arrived at the scene by the time Deberry was searched or the fact that the driver, Nixon, had already been placed in the back of a police cruiser. Even though Deberry claimed that he could not move when he stepped out of the vehicle because his path was blocked, the trial court made no reference to any possible coercion on the part of Officer Brogdon.

The trial court did find that Officer Brogdon's intent was to check for weapons when he asked Deberry to get out of the car. The officer had testified that a pat-down of Deberry was necessary to ensure his own safety. Although the officer contended that his intent was to ask permission for a full search, there was nothing, as the trial court found, to indicate he had any reason to believe Deberry possessed any contraband. The officer had not found drugs or weapons on the driver, there was no indication of weapons or drugs in the car, and Deberry had been cooperative.[1] Further, Deberry testified that he consented only to a weapons check because the officer had first asked him if he had anything in his possession that would "poke" him during the pat-down. The trial court fully accredited that portion of Deberry's testimony.

Our supreme court has made the following observations:

> In determining the scope of consent, the relevant considerations include any express or implied limitations regarding the time, duration, area, or intensity of police activity necessary to accomplish the stated purpose of the search, as well as the expressed object of the search. The scope of consent is not based on the subjective intentions of the consenting party or the subjective interpretations of the searching officer. Instead the standard is "that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect."

---

[1] The facts of this case are distinguishable from Maryland v. Pringle, 540 U.S. 366 (2003). In that case, an officer stopped a car for speeding and subsequently obtained consent from the driver to search the vehicle. During the consensual search, the officer found $763 in the glove box and cocaine in the backseat armrest. Because none of the three occupants of the car, including Pringle, who was a front seat passenger, claimed the cocaine, the officer arrested each of them. At the police station, one of the passengers claimed the cocaine. The Court held that a reasonable officer could have concluded that there was probable cause to believe that Pringle was in possession of the drugs and therefore did not violate the Fourth Amendment by arresting him. Id. In the instant case, the evidence does not indicate that the officer had probable cause to believe that any crime had been committed by the defendant Deberry.

State v. Troxell, 78 S.W.3d 866, 871-72 (Tenn. 2002) (quoting Florida v. Jimeno, 500 U.S. 248, 251 (1991)) (citations and footnote omitted).

As indicated, Deberry contended that he consented only to a pat-down for weapons. The officer believed Deberry had agreed to a full search. The trial court accredited the testimony of Deberry to the extent that he did not expect to be "disrobed" when the pat-down did not reveal any weapons. Although the order of suppression could have been more explicit so as to indicate what a "reasonable person would have understood by the exchange," the holding that the officer exceeded the scope of consent is supported by evidence in the record. While it appears that the officer had a reasonable basis to ask Deberry to step out of the car, deference should be afforded to the trial court, who saw and heard the witnesses first-hand, unless the evidence preponderates against the findings. In this instance, the evidence presented by the state is not so persuasive as to overcome the factual conclusions of the trial judge.

In a related issue, the state argues that even if the drugs are suppressed as to Deberry, the driver, Nixon does not have standing to challenge the suppression because he did not have a reasonable expectation of privacy as to what was in Deberry's personal possession. A failure on the part of the state to raise the issue of standing at trial serves as a waiver of the issue on appeal. State v. White, 635 S.W.2d 396 (Tenn. Crim. App. 1982). In White, our court held as follows:

> [T]he State has a duty to notify the defendant that it opposes his motion on standing grounds, a result which reflects the traditional policies of notice and fair play. If the State fails to raise the standing issue, but instead opposes the motion on the merits, the defendant is entitled to infer that the State concedes his standing and need not offer any evidence relevant to his expectation of privacy.

Id. at 399-400 (citations omitted).

In this case, standing was not raised in the trial court and the defendant did not respond to the issue on appeal. The only mention of standing prior to this appeal came in the affidavit attached to the motion to waive timely filing of notice of appeal. In the affidavit, the state argued that the suppression order was overbroad because Nixon did not have standing to challenge the drugs seized from Deberry. Because, however, the state failed to raise the issue of standing in the trial court, it is our view that the issue is waived on appeal.

Accordingly, the order of suppression is affirmed to the extent that the contraband found in the possession of the defendant Deberry may not be admitted as evidence. The state waived the issue of the defendant Nixon's standing by failing to present the issue in the trial court. The judgment is affirmed and the charges against each defendant for possession of cocaine are dismissed.

_____
GARY R. WADE, PRESIDING JUDGE