**STATE of Tennessee, Appellee,**

v.

**Timothy WHITE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 17, 1982.

David M. Himmelreich, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

James D. Hutchins, Athens, for appellant.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Timothy White, was found guilty of three counts of possession of controlled substances with intent to sell. The trial court ordered two sentences of four to seven years and three to five years to be served concurrently, and a third sentence of two to three years to be served

consecutively to the other two. On appeal White raises three issues challenging the trial court's denial of his motion to suppress and a fourth issue in which he attacks the admissibility of certain evidence at trial. We find no reversible error, and we therefore affirm the convictions.

At the suppression hearing, Deputy Sheriff Robin Watson testified that on April 17, 1980, he and a fellow officer went to the home of Scott Armstrong after receiving information from an unnamed informant that Scott was dealing in drugs at that location. The officers did not have a search warrant, but instead intended to seek consent to search from Scott's father, who owned the house.

When they arrived at the Armstrong residence, the officers saw two cars sitting at the end of the driveway nearest the road. One, headed toward the house, was driven by Scott Armstrong; the other, headed away from the house, was driven by defendant Timothy White. As their headlight beams hit the two cars, Deputy Watson saw a large pill bottle, "six or eight inches long," being passed from one car to the other. He described it as a "thousand pill container." The officers immediately pulled in behind the two cars and got out of their vehicle.

As Watson approached White's car, he looked in the window of the driver's side and saw the oversized pill bottle lying in White's lap. He asked White to get out of the car, and as White did so, the plastic container fell to the floorboard.

The pill bottle was retrieved from the car and found to contain a large number of "yellowish" pills that the officers testified appeared to be "speed." As it later turned out, however, these pills contained only caffeine. The officers also seized a cellophane bag containing an "off-white powder" from the front seat of White's car; the contents turned out to be phencyclidene, a schedule III controlled substance. In addition, they seized from the passenger area a brown paper bag that contained what was later analyzed as diazepam (schedule IV) and cocaine (schedule II). Various items described as drug paraphenalia were found in a leather pouch, also taken from White's car.

A subsequent search of the Armstrong residence, pursuant to a waiver signed by Scott Armstrong, failed to turn up any contraband. However, officers did find a large quantity of marijuana in an immobolized vehicle parked on the Armstrong property; possession of the marijuana was later charged to Scott Armstrong.

Both Armstrong and White testified at a joint suppression hearing. They denied that the thousand pill container was ever in a position where the officers could have seen it. On cross-examination White testified that the caffeine tablets were in a brown paper sack on the passenger side of his vehicle.

■ The trial judge ruled that upon observing the thousand pill container being passed at a location where drug dealing was reportedly occurring, the officers were justified in approaching the two cars for further investigation. We find that the record factually supports this conclusion and that the initial intrusion was thus justified under the principles announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When Officer Watson saw the pill container in White's car, he was further justified in removing White from the car and recovering the pills. Given the nature and circumstances of this seizure, he was also justified in making a full search of the car, and the items subsequently seized were legally admissible against White. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Hence, we find no error in the trial court's ruling on the motion to suppress.

■ In reaching our determination on the merits of the suppression issue, we have deliberately rejected the position of the State, taken for the first time on appeal, that Timothy White lacked standing to contest the search of the car he was driving on the night of his arrest. Citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the State argues that because White testified that the car was

owned by his girlfriend, he proved conclusively that he lacked the requisite privacy interest in the vehicle to challenge its search. The record shows, however, that this issue was not raised or litigated below, and thus the nature and circumstances of the defendant's possession of the vehicle on the night of his arrest do not appear.

The State correctly points out that a defendant asserting a Fourth Amendment challenge to evidence has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search and seizure. *Rakas v. Illinois, supra,* 439 U.S. at 130, note 1, 99 S.Ct. at 423–24, note 1. That is, the defendant bears the burden of producing evidence of his standing as well as the burden of persuading the court that he has standing. *See* E. Cleary, McCormick on Evidence § 336 (1972). That the defendant bears the burden of proving standing, however, does not necessarily mean that defendant bears the burden of alleging his own standing before it has been challenged.

Perhaps the earliest case pertaining to this issue is *Combs v. United States,* 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972), in which the defendant moved in the trial court to suppress items seized pursuant to a search warrant, on the ground that no probable cause existed to support the warrant. At the suppression hearing neither the government nor the defendant offered any evidence relating to Combs's standing to contest a search conducted on his father's farm. The trial court denied the motion to suppress and Combs appealed. The Court of Appeals did not reach the merits of his Fourth Amendment claim, but held instead that he lacked standing to challenge the legality of the search.

Reviewing this decision, the United States Supreme Court found the record "virtually barren of the facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to 'a reasonable expectation [on his part] of freedom from governmental intrusion' upon those premises." *Id.* at 227, 92 S.Ct. at 2286 (citation omitted).

Suggesting that a defendant need not claim standing until the prosecution challenges it, the Court said:

> In concluding that petitioner lacked such standing, the Court of Appeals noted, *inter alia*, that he had "asserted no possessory or proprietary claim to the searched premises" during the course of the trial. Clearly, however, petitioner's failure to make any such assertion, either at the trial or at the pretrial suppression hearing, may well be explained by the related failure of the Government to make any challenge in the District Court to petitioner's standing to raise his Fourth Amendment claim.

*Id.,* 408 U.S. at 226–227, 92 S.Ct. at 2286 (citation omitted).

The most recent case dealing with the obligation to raise this threshold question is *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), in which the United States Supreme Court utilized an estoppel concept in refusing to consider the standing issue when it was raised for the first time in that court. The prosecution had requested a remand, but the court refused to take this action, saying:

> The Government . . . may lose its right to raise factual issues of this sort before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation . . . [T]he Government, through its assertions, concessions and acquiescence, has lost its right to challenge petitioner's assertion that he possessed a legitimate expectation of privacy in the searched home.

*Id.,* 451 U.S. at 209–211, 101 S.Ct. at 1646–47, 68 L.Ed.2d at 44–45.

These cases indicate that the State has a duty to notify the defendant that it opposes his motion on standing grounds, a result which reflects the traditional policies of notice and fair play. If the State fails to raise the standing issue, but instead opposes the motion on the merits, the defendant is entitled to infer that the State concedes his

standing and need not offer any evidence relevant to his expectation of privacy. *See United States v. Smith*, 621 F.2d 483, 490 (2d Cir. 1980) (Meskill, J., dissenting), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981).

The State has not requested a remand in this case, but has argued the merits of the ruling below, while at the same time refusing to concede standing. In the absence of a specific request, we decline to decide whether this case involves such unusual circumstances as to require a remand on the issue of standing,* preferring instead to hold that the State is estopped on the basis of the principles enunciated in *Steagald, supra*. This result is consistent with the provision of Rule 36(a), Tennessee Rules of Appellate Procedure, that the appellate courts of this state will not grant relief to the party responsible for error. *Cf. Whitwell v. State*, 520 S.W.2d 338, 342–43 (Tenn. 1975); *Hester v. State*, 2 Tenn.Cr.App. 11, 450 S.W.2d 609, 611 (1969). *See also State v. Simerly*, 612 S.W.2d 196, 197 (Tenn.Cr. App.1980); *Hill v. State*, 513 S.W.2d 142, 143 (Tenn.Cr.App.1974).

We find no error in connection with the trial judge's comment to the effect that the defendant had appeared in his court on previous occasions. The nature of the statement, made outside the presence of the jury and in the context of the trial court's *ruling* on the motion to suppress, fails to establish that the trial judge harbored any bias toward White or that White was deprived of an impartial hearing.

It does appear that the trial judge somewhat precipitously cut off the defendant's ability to call the second officer present at the search, Deputy Matthews, to testify at the suppression hearing following the testimony of Deputy Watson. However, defense counsel made an offer of proof as to what he expected Matthews to say on the stand that was not borne out by the officer's later testimony at trial. The

record thus fails to show actual prejudice to the defendant as a result of the trial court's ruling, and we conclude that any error in this regard was harmless.

The defendant's remaining allegation is that the trial court erred in permitting testimony before the jury concerning the marijuana and certain drug paraphernalia found at the Armstrong residence. The State responds that White was arrested on the Armstrong premises in possession of drugs, drug-related items, and $575 in cash, at a time when he was unemployed; that he was observed passing a large container of pills to or from Armstrong; and that under these circumstances the contraband attributable to Armstrong becomes relevant to the charge of possession with intent to sell against White.

In view of the other evidence in the record, we conclude that the trial court's ruling on this matter did not result in reversible error. Moreover, the prosecutor's argument that White was "seriously involved in drugs" is likewise an inference that may be fairly drawn from the facts in the record and thus did not constitute error.

The judgment of the trial court is affirmed.

DUNCAN and SCOTT, JJ., concur.

---

* *Compare and contrast United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), in which the Supreme Court overturned the "automatic standing" rule of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), upon which the defendant had relied at trial to establish his standing to invoke the Fourth Amendment exclusionary rule.