IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2016

## CRAIG ABSTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 02-04759      W. Mark Ward, Judge**

_____

**No. W2014-02513-CCA-R3-PC  -  Filed May 17, 2016**

_____

The Petitioner, Craig Abston, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief. On appeal, he raises the same lone issue that he raised in his petition and at the evidentiary hearing: that trial counsel was ineffective for failing to file a motion to suppress a statement given to police following his arrest. The State first challenges our jurisdiction to hear this appeal, and, alternatively, contends that the Petitioner has failed to prove that the post-conviction court erred in denying him relief. In reply, the Petitioner disagrees with the State's jurisdictional argument and asks that we proceed to consider the issue on its merits. Upon careful review, we reject the State's jurisdictional challenge. After considering the merits of the Petitioner's claim, we conclude that he is not entitled to relief. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Lance Randall Chism (on appeal) and Robert C. Brooks (at hearing and on appeal), Memphis, Tennessee, for the appellant, Craig Abston.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Amy P. Weirich, District Attorney General; and Rachel Russell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL & PROCEDURAL BACKGROUND

This case comes before us with a complex and protracted procedural history. Evidence adduced at the Petitioner's 2004 trial showed that on October 5, 2001, the Petitioner was the passenger in a blue sedan which rear-ended a red Crown Victoria driven by the victim. State v. Craig Abston, No. W2007-00019-CCA-R3-CD, 2009 WL 2030432, at *1 (Tenn. Crim. App. July 10, 2009), perm. app. denied (Tenn. Dec. 14, 2009). Both drivers exited their vehicles to inspect the damage, and the Petitioner got out of the back seat of the blue car. Brian Sanders and Joseph Topps were passengers in the red car being driven by the victim. Mr. Sanders heard the victim say, "You hit my car," to which the Petitioner responded, "So what, we hit your car, Hoover Crip." The Petitioner repeated this statement several times while the victim opened the door to get back into his car. The Petitioner continued talking, and the victim got out of his car again. Mr. Sanders then heard gunfire. Mr. Sanders was unable to identify the shooter, but he was certain that the Petitioner was the person who exited from the backseat of the blue car and who "yelled" at the victim. Mr. Topps provided substantially the same testimony and was also unable to identify the shooter. However, Mr. Topps was able to discern that the shooter had two gold teeth. Id.

Don Cottrell testified that he was driving a vehicle located two cars behind the blue car when he witnessed that car rear-end a red car that was attempting to turn. Abston, 2009 WL 2030432, at *1. According to Mr. Cottrell, both drivers exited their vehicles, but the victim shortly thereafter returned to his car like the accident was "no big deal." The driver of the blue car likewise returned to his vehicle. Mr. Cottrell testified that the blue car then pulled forward next to the red car and shots were fired from the backseat on the driver's side of the blue car. Mr. Cottrell did not see anyone with a weapon in the red car. Id.

The victim sustained a lethal 9 millimeter gunshot wound to his chest. Abston, 2009 WL 2030432, at *2. According to the Petitioner's father, Gregory Abston, the Petitioner's brother, Renarld Abston, asked him to dispose of a 9 millimeter handgun in October 2001. Mr. Abston said that he threw the gun into the Mississippi River. Id.

Sergeant Nathan Berryman took the then sixteen-year-old Petitioner's statement in the presence of his mother. Abston, 2009 WL 2030432, at *2. According to the Petitioner, after the wreck, the victim pulled out a gun and shot at the blue car. The Petitioner then grabbed his brother's gun and fired back. He said that he was not looking where he shot and that he fired about seven shots. During this interview, Sergeant Berryman noted that the Petitioner had two gold caps on his teeth. Id.

The Petitioner was ultimately convicted of one count of second degree murder and two counts of attempted second degree murder. He was sentenced to twenty years for the second degree murder conviction, twelve years for one attempted murder conviction, and eight years for the remaining attempted murder conviction. The twelve-year sentence was ordered to be served concurrently with the twenty-year sentence, and the eight-year sentence was to be served consecutively to that sentence, resulting in a total effective sentence of twenty-eight years.

On September 7, 2005, the Petitioner, with the assistance of counsel, filed a timely petition for post-conviction relief. The petition alleged multiple grounds of ineffective assistance of his trial counsel, including counsel's failure to: (1) file a timely motion for new trial; (2) file a notice of appeal; (3) adequately communicate regarding investigation and preparation of the Petitioner's case; (4) investigate witnesses and secure their appearances at trial; (5) consult mental health experts to determine whether the Petitioner suffered from diminished mental capacity; (6) seek expert services; (7) file any meaningful evidentiary motions; (8) make appropriate objections; and (9) seek all appropriate jury instructions. On June 9, 2006, without holding an evidentiary hearing, the post-conviction court entered an order finding that counsel's failure to pursue appellate review of the Petitioner's convictions was ineffective assistance. The court noted that the pleadings and the trial record supported the Petitioner's allegation with respect to counsel's failure to perfect an appeal—the motion for new trial was filed late and no notice of appeal was ever filed. The post-conviction court granted a delayed appeal, giving the Petitioner an opportunity to file a motion for new trial in accordance with Tennessee Code Annotated section 40-30-113.[1] With respect to the remaining issues, the order stated that "[i]t [was] not necessary or efficient to address other issues raised in the Petition for Post-Conviction Relief at [that] time. Such other issues may be dismissed without prejudice to Petitioner timely filing another Petition for Post-Conviction Relief after resolution of appellate issues, if same is necessary."

On July 7, 2006, a motion for new trial was filed, and that motion was denied on December 1, 2006. A timely appeal to this court followed. On appeal, a panel of this court reversed the trial court's order of consecutive sentences and remanded to the trial court for a new sentencing hearing. Abston, 2009 WL 2030432, at *4. We concluded that a new sentencing hearing was necessary due to the trial court's failure to place its reasons for ordering consecutive sentences on the record. Id. Additionally, the

---

[1] "When the trial judge conducting a hearing pursuant to this part finds that the petitioner was denied the right to an appeal from the original conviction . . . [and] no motion for a new trial was filed in the original proceeding, [the judge can] authorize a motion to be made before the original trial court within thirty (30) days." Tenn. Code Ann. § 40-30-113(a)(3).

Petitioner's twelve-year sentence was reduced to eight years. Id. at *6. The convictions were otherwise affirmed. Id. at *2-4.

Upon remand, the trial court held a sentencing hearing and again sentenced the Petitioner to consecutive terms based on the dangerous offender classification, resulting in a total effective sentence of twenty-eight years. The Petitioner again appealed, and this court affirmed the imposition of consecutive sentences. State v. Craig Abston, No. W2010-01231-CCA-R3-CD, 2011 WL 3556987, at *5 (Tenn. Crim. App. Aug. 10, 2011), perm. app. denied (Tenn. Apr. 12, 2012).

On September 5, 2012, the Petitioner filed a pro se petition for post-conviction relief, utilizing the standard form available pursuant to Tennessee Supreme Court Rule 28, Appendix A. In the petition, he acknowledged that he had previously filed a petition for post-conviction relief, although when asked to provide details regarding that petition, he listed the Tennessee Supreme Court's April 12, 2012 denial of his Tennessee Rule of Appellate Procedure 11 application following his delayed direct appeal. In the section of the form asking whether he had received an evidentiary hearing on his petition, he wrote, "N/A." In another section of the form, when asked to provide the name of any attorneys who had previously represented him, he included the name of the attorney who represented him on his 2005 petition. As grounds for relief, he placed a check mark next to the following listed grounds: "[c]onviction was based on use of coerced confession[,] . . . on use of evidence obtained pursuant to an unlawful arrest[,] . . . on a violation of the privilege against self-incrimination[,] . . . on the unconstitutional failure of the prosecution to disclose to defendant evidence favorable to defendant[,] . . . [and] illegal evidence."

There is no initial order appointing counsel in the appellate record, but on May 24, 2013, the post-conviction court entered an order allowing an attorney to withdraw and substituting another attorney. On July 17, 2013, another order was entered allowing the second attorney to withdraw and appointing a third attorney ("post-conviction counsel") to the Petitioner's case. On September 26, 2014, an amended petition was filed with the assistance of post-conviction counsel.[2] The sole ground for relief raised in that petition was whether trial counsel was ineffective for failing to file a motion to suppress the Petitioner's post-arrest statement to police.

---

[2] It is unclear why there was a fourteen-month delay between post-conviction counsel's appointment and the filing of the subsequent amended petition.

-4-

At the September 26, 2014, evidentiary hearing, trial counsel[3] testified that he and his late-partner represented the Petitioner at trial. Trial counsel said that he could not remember with particularity the Petitioner's making a statement to police following his arrest, but he believed the Petitioner did make a statement. He also could not recall whether a motion to suppress was filed, but he stated that if there was not one in the record, then it was not filed. He agreed that, hypothetically, if a motion to suppress had been considered, he and co-counsel would have discussed it together before making a decision whether one should be filed. He also said that, if a decision was made not to file a motion to suppress, it was because "the statement would have been consistent with [the] defense." Trial counsel recalled that they pursued a theory of self-defense at trial.

According to trial counsel, the Petitioner's father testified that his "son" gave him a gun to dispose of after the shooting. Trial counsel could not remember whether the Petitioner's father was referring to the Petitioner or his brother Renarld,[4] but he believed the father said that the Petitioner gave him the gun. He did remember that the gun belonged to Renarld, who was driving the blue car at the time of the shooting.

Trial counsel said that when the Petitioner gave his statement to the police, the Petitioner's mother was present. However, trial counsel said that because ten years had passed between the time of the trial and the evidentiary hearing, he had difficulty recalling the circumstances under which the statement was made. He did remember that the Petitioner's statement was that he shot at the victims after they began firing at the car the Petitioner was in, which supported a theory of self-defense.

Kim Green Abston, the Petitioner's mother, testified that she was present when the police came to her house to arrest the Petitioner. She said that, initially, two detectives came to the house and requested to speak with her other son, Renarld. According to Ms. Abston, she asked the officers whether they had a warrant, and when they replied in the negative, she told them that they could not talk to Renarld. Ms. Abston asked the detectives why they wanted to speak with Renarld, and they told her it was "about something that had happened Friday night." Ms. Abston testified that the detectives left and then "a police car pulled up." The newly-arrived officer told Ms. Abston that he had come "to transport [the Petitioner and Renarld] downtown." She said this was the first mention that the Petitioner was involved.

---

[3] The Petitioner was represented by two attorneys during his trial, but one of the attorneys was deceased at the time of the evidentiary hearing. Trial counsel said that his deceased partner was lead counsel but that they both contributed substantially to the Petitioner's defense.

[4] Because Renarld shares a surname with several other persons involved in this case, we use his first name for clarity. We intend no disrespect in doing so.

Ms. Abston said that the officer took both her sons to the police station. She drove to the station separately, and "by the time [she] made it downtown . . . , [the Petitioner] was already in the room handcuffed and had been questioned when [she] got here." According to Ms. Abston, she knew the Petitioner had been questioned by the time she arrived because, when she was taken to the room where the Petitioner was being held, she "could hear them" talking to the Petitioner through the door. Ms. Abston told the officers "they couldn't talk to [her] son without an attorney." According to Ms. Abston, the officers told her that she "couldn't afford an attorney." She said that the officers then took the Petitioner "to a room and [she] tried calling an attorney." Ms. Abston testified that the officers then presented her with "a sheet of paper telling [her] to sign it." She said that the paper contained "a statement [from the Petitioner] that had been typed up." Ms. Abston signed the statement after an officer told her that it was the Petitioner's statement, that she could not afford an attorney, that he was going to jail, "and that was that." She said that she did not read the statement before signing it.

The Petitioner testified that he and his brother were in the backyard of his mother's house when police came and asked to speak with Renarld. His mother summoned Renarld inside, and the Petitioner remained in the backyard. The Petitioner said that, from where he was standing in the backyard, he could hear his mother and brother talking to the detectives in the kitchen. The Petitioner heard the detectives ask Renarld if he knew "what happened Friday at the Whitehaven and Hamilton homecoming game," and Renarld gave a negative response. He also heard the detectives ask his mother who was in the backyard, and she named the Petitioner. The detectives asked Ms. Abston how old the Petitioner was, and she told them he was sixteen. She then asked the Petitioner to come inside the house.

According to the Petitioner, when he entered the house, Sergeant Barrom[5] and Sergeant Nathan Berryman introduced themselves and asked the Petitioner whether he was at the game where the shooting took place. The Petitioner denied being at the game, explaining that he was suspended from school at the time. The Petitioner said that Sergeant Barrom handcuffed him and called for a patrol car to transport him and his brother to the police station.

Once at the station, the Petitioner was placed in an interrogation room, where he was left "for a long time," which he estimated was approximately two hours. Eventually, Sergeant Barrom reentered the room, and the Petitioner asked whether his mother or attorney were at the station. Sergeant Barrom told him there was no one there and that he had "done growed up [sic] now." Sergeant Barrom left again, returning about forty minutes later with Ms. Abston. The Petitioner said that officers told his mother that

---

[5] Sergeant Barrom's first name is unclear from the record.

someone named "Little Fred" implicated the Petitioner and his brother in the "incident that happened at Whitehaven." However, according to the Petitioner, "no one never said who exactly did anything because didn't [sic] anybody know."

According to the Petitioner, when officers told Ms. Abston that her sons had been involved in the shooting, "she panicked," "started crying," and told the Petitioner to talk to Sergeant Barrom. The Petitioner said that he told his mother that he "didn't want to talk to them" and "[t]old them to get the hell out of there." The Petitioner said that he asked for a lawyer, but Sergeant Berryman called him a "little punk" and said he "better start showing some respect . . . ." Sergeant Berryman then left the room.

The Petitioner said that Sergeant Barrom continued to ask him what happened, but the Petitioner told him that he did not want to talk to him. Sergeant Barrom "grabbed [the Petitioner's] mama's hand" and told her that he could only help keep the Petitioner in juvenile court if the Petitioner talked to Sergeant Barrom and told him "exactly what happened." According to the Petitioner, his mother "kept crying" and said, "[G]o on and tell them." The Petitioner said he started crying and "told them what happened."

The Petitioner said that after he gave his verbal statement, Sergeant Barrom gave his mother a document explaining the Petitioner's <u>Miranda</u>[6] rights, which she read. The Petitioner said that he was not advised of his rights prior to giving the statement. Afterwards, the Petitioner wrote down "everything that [he] told [Sergeant Barrom]" in the [interrogation] room . . . ."

The State called Paul Hagerman, the prosecutor in the Petitioner's case. Mr. Hagerman said that he debated whether to introduce the Petitioner's statement at trial because the statement supported the Petitioner's claim of self-defense. In particular, Mr. Hagerman said that the Petitioner asserted that he fired the gun because he felt threatened. Mr. Hagerman ultimately decided to use the statement because "identity was an issue . . . ." According to Mr. Hagerman, there was a witness who "identified [the Petitioner] as being in the car and having taken certain actions," but the witness did not see the shooting and could not identify the shooter. However, a second witness testified that the person who took the actions described by the first witness was the shooter, and the description provided by the second witness matched the Petitioner's.

On cross-examination, Mr. Hagerman testified that Sergeants Berryman and Barrom noted in the case file that the Petitioner had gold teeth and that Sergeant Berryman testified to that fact at trial.

---

[6] <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966)

On November 25, 2014, the post-conviction court entered a detailed order denying relief. The court noted that trial counsel's memory of his thought processes was understandably diminished due to the ten years that had passed since the Petitioner's trial. The court noted that trial counsel testified that the Petitioner's statement was helpful because it supported a claim of self-defense. The post-conviction court found that it was "a reasonable defense strategy in light of the other evidence that came out at trial" to use the statement to support the Defendant's claim of self-defense. The court noted that there "would have been legally sufficient evidence to support the Petitioner's conviction . . . even if the statement had not been admitted into evidence" based on the following trial testimony: the Petitioner was in the back seat of the car at the time of the shooting; shots were fired by someone sitting in the back seat; the Petitioner exited the back seat of the car after the shooting; the shooter had gold teeth; and when the Petitioner was interviewed by police, he had two gold caps on his teeth. Ultimately, the court concluded that the Petitioner failed to prove that the decision not to file the motion to suppress was based on inadequate preparation or deficient performance.

Furthermore, the post-conviction court found that the Petitioner did not "establish a reasonable probability that he would have prevailed on the motion to suppress" if it had been filed. The court noted that the Petitioner did not offer any testimony at the hearing to support his claim that he was arrested without probable cause and that he had objected to testimony from the State relevant to that subject. Additionally, with respect to a claim that his statement was coerced, the court pointed out that the Petitioner's testimony differed greatly from his mother's, and he failed to call the interrogating officers as witnesses. The court characterized the Petitioner's evidence at the hearing as being "riddled with inconsistencies" and "self-serving." Accordingly, the court concluded that the Petitioner failed to prove prejudice.

This timely appeal followed.

ANALYSIS

On appeal, the Petitioner asserts that the post-conviction court erred in denying him relief on his claim that trial counsel was ineffective for failing to file a motion to suppress the statement he made to police following his arrest. The State first responds with a challenge to this court's jurisdiction to hear the appeal. Alternatively, the State avers that the judgment of the post-conviction court should be affirmed. The Petitioner disagrees with the State's jurisdictional argument and requests that we consider the issue presented on the merits.

Initially, the State requests that we dismiss this appeal, alleging that the post-conviction court's order denying relief is not a "final judgment" within the meaning of Tennessee Rule of Appellate Procedure 3(b). The State bases this argument on the fact that the 2005 post-conviction court's order allowing a delayed appeal and holding all other issues in abeyance has never been revisited. Thus, the State reasons, the 2014 post-conviction court's order disposing of the sole newly-raised issue in the 2014 petition did nothing to resolve those pre-existing claims. The State further contends that the 2012 and 2014 petitions cannot be characterized as amended petitions because, following the conclusion of a delayed direct appeal, a petitioner may only amend the petition to add a claim resulting from appellate counsel's handling of the delayed appeal. Accordingly, the State argues that we should dismiss this appeal and remand to the post-conviction court for resolution of the remaining 2005 claims.[7]

In response, the Petitioner argues that his 2012 pro se petition operated as an amendment to the 2005 petition following his delayed appeal. The Petitioner says that he has abandoned the issues raised in his 2005 petition and that he further narrowed the issue for review in the amended 2014 petition filed with the assistance of counsel. Thus, the Petitioner disagrees that there are outstanding issues that have not been ruled on by the post-conviction court, and he asks that we proceed on the merits. With respect to the State's argument that his amendments were improper, the Petitioner avers that the State has waived this argument because it failed to raise it in the post-conviction court.

Tennessee Code Annotated section 16-5-108(a)(2) dictates that "[t]he jurisdiction of the court of criminal appeals shall be appellate only, and shall extend to review of the final judgments of trial courts in . . . Post-Conviction Procedure Act proceedings . . . ." Likewise, Tennessee Rule of Appellate Procedure 3(b) states that an appeal as of right by a petitioner lies from a final judgment in a post-conviction proceeding. A judgment is final "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446, 460 (Tenn. 1995); Saunders v. Metro. Gov't of Nashville & Davidson County, 383 S.W.2d 28, 31 (Tenn. 1964). Stated differently, "a judgment is final if it decides the

---

[7] The State raised these same arguments in a motion to dismiss that was filed following the Petitioner's notice of appeal from the post-conviction court's order denying relief. The Petitioner's response to this motion was that, because a delayed appeal was granted pursuant to the 2005 petition, "the original pro se post-conviction petition was never addressed and is a nullity, having been filed prematurely." The Petitioner "submit[ted] that there [was] no need to make [the case] more complicated than it is." In an order filed on September 9, 2015, we denied the State's motion, concluding that "the issues raised by the parties should be considered" by this court following briefing by the parties. We also noted that the State was not foreclosed from raising the same issues on appeal as were raised in the motion to dismiss.

controversy between the parties on the merits and fixes their rights so that, if the judgment is affirmed, nothing remains for the trial court to do but to proceed with its execution." State v. Comer, 278 S.W.3d 758, 761 (Tenn. Crim. App. 2008) (quoting Hanson L. Davis v. State, No. 02C01-9804-CC-00104, 1998 WL 726533, at *1 (Tenn. Crim. App. Oct. 16, 1998) (order)).

The Petitioner's 2005 petition included nine claims for relief, only two of which were addressed by the 2005 post-conviction court's order granting a delayed appeal. The post-conviction court refrained from ruling on the remaining seven issues, stating that "[i]t [was] not necessary or efficient to address other issues raised in the Petition for Post-Conviction Relief at [that] time. Such other issues may be dismissed without prejudice to Petitioner timely filing another Petition for Post-Conviction Relief after resolution of appellate issues, if same is necessary." In the Petitioner's 2012 pro se petition, filed after the conclusion of his delayed appeal, he did not provide specific factual allegations supporting his grounds for relief; rather, he merely placed check marks next to several grounds listed on the standard form. When the 2014 amended petition was filed with the assistance of counsel, the sole ground for relief included was trial counsel's failure to file a motion to suppress the Petitioner's post-arrest statement to police.

Although the post-conviction court's November 2014 order denying relief does not address the issues raised in the 2005 petition, those issues were not pursued in either the 2012 or 2014 petition or at the evidentiary hearing. While the 2012 petition does not specify that it is an amended petition, the Petitioner did acknowledge that a previous petition had been filed in the case, and the post-conviction court noted the same in its order denying relief.[8]

Both the Petitioner and the State concur that when the 2005 post-conviction court granted the delayed appeal, the remainder of the issues in the petition were held in abeyance. Likewise, we agree that following the direct appeal, the issues raised in the 2005 petition were still viable because they were held in abeyance and never dismissed by the post-conviction court. Ultimately, we also agree with the Petitioner's submission that "a common sense reading of the record supports a finding that [the 2012 pro se petition] was simply an amendment to [the] Petitioner's original petition for post-conviction relief filed on September 7, 2005." Therefore, through what we characterize as two amended petitions—the 2012 pro se petition and 2014 petition—the issues raised

---

[8] The post-conviction court's order denying relief stated that the "cause came to be heard on the pro se Petition for Post-Conviction Relief filed . . . on September 6, 2012, an Amended Petition filed on September 26, 2014, and the record as a whole." Additionally, in a section of the order entitled "Procedural History," the court acknowledged that the Petitioner had previously filed a petition on September 7, 2005. Further, the court noted that the petition requested a delayed appeal, which was granted, and that the 2005 post-conviction court "[held] all other issues in abeyance."

in the 2005 petition were abandoned, and the Petitioner, as was his right, chose to proceed only on the issue regarding trial counsel's failure to file a motion to suppress. Therefore, when the post-conviction court entered its November 2014 order denying relief, it addressed the only issue remaining and was a final judgment within the meaning of Tennessee Code Annotated section 16-5-108(a)(2).

Although the State asserts that these subsequent petitions cannot be characterized as amendments based on Tennessee Supreme Court Rule 28, § 9(D)(3)(a),[9] we agree with the Petitioner that the State has waived this argument because it was raised for the first time on appeal. "Issues not addressed in the post-conviction court will generally not be addressed on appeal." Walsh v. State, 166 S.W.3d 641, 645-46 (Tenn. 2005) (citing Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); State v. White, 635 S.W.2d 396, 397-98 (Tenn. Crim. App. 1982)). The State chose to not file a response to the 2012 or 2014 post-conviction petitions, which could have challenged the procedural posture of the case, and similarly chose to remain silent on the issue at the time of the evidentiary hearing. Rather, the State responded to the merits of the Petitioner's claim in the lower court, and it is not entitled to change course on appeal. Accordingly, we conclude that we do have jurisdiction to hear the appeal, and we proceed to consider the merits of the Petitioner's case.

## II. Ineffective Assistance of Counsel

Finally, we turn to the merits of the Petitioner's argument on appeal: that trial counsel was ineffective for failing to file a motion to suppress his statement to police. The Petitioner contends that the statement "was made as the result of an illegal arrest, coercion, denial of the [Petitioner's] right to counsel, and failure to properly Mirandize [him]." The State responds that the post-conviction court properly denied relief.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was

---

[9] Rule 28, § 9(D)(3)(a) states that "[w]here a delayed appeal is granted and the petitioner is unsuccessful on appeal, and new issues cognizable in a post-conviction proceeding result from the handling of the delayed appeal, the petitioner may amend the original post-conviction petition to include such new issues."

deficient and (2) that the deficiency was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 688-89.  Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009).  On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings.  Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001).  Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court.  Id.  Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness.  Id. at 457.

We agree with the post-conviction court's conclusion that trial counsel's failure to file a motion to suppress was not ineffective assistance.  First, it is well-established that, in post-conviction proceedings, "we should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation."  Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  The Petitioner's statement was the only proof supporting his self-defense claim.  Thus, trial counsel's decision not to file a motion to suppress was a reasonable, strategic decision.  Additionally, other than the conflicting testimony of himself and his mother, the Petitioner offered no evidence that his statement would have been suppressed if a motion had in fact been filed.  In order to prove prejudice on a claim that counsel was ineffective for failing to file a motion to suppress, a petitioner must show that "(1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested."  Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011) (citing Vaughn v. State, 202

-12-

S.W.3d 106, 120 (Tenn. 2006)). Thus, "[i]f a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to . . . file a motion to suppress . . . the petitioner is generally obliged to present . . . the [evidence supporting his claim] at the post-conviction hearing in order to satisfy the Strickland prejudice prong." Demarcus Sanders v. State, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013).

In his reply brief, the Petitioner claims that his testimony alone established that a motion to suppress would have been granted. He says that the State then had the burden of rebutting that evidence, for instance, by producing the testimony of the detectives at the evidentiary hearing. The Petitioner acknowledges that his position is unsupported by the previous holdings of panels of this court but he urges that we part course from those panels and grant him relief. See, e.g., Jason Lee Fisher v. State, No. M2014-02327-CCA-R3-PC, 2015 WL 5766521, at *6-7 (Tenn. Crim. App. Oct. 2, 2015) (noting that testimony of petitioner and trial counsel alone was not enough to establish that motion to suppress would have been granted); Keven Scott v. State, No. W2010-02515-CCA-R3-PC, 2011 WL 5903933, at *9-10 (Tenn. Crim. App. Nov. 22, 2011) (same). We decline this request. The rules are clear that the Petitioner carries the burden of proving his factual allegations by clear and convincing evidence, see Tenn. Code Ann. § 40-30-110(f), as well as the burden of proving counsel's actions were deficient and prejudicial, see, e.g., Strickland, 446 U.S. at 668. The Petitioner's bare assertions at the evidentiary hearing do not meet these burdens, especially considering the fact that the post-conviction court discredited his testimony. The Petitioner failed to present any evidence at the evidentiary hearing suggesting that a motion to suppress his statement would have been granted.[10] Accordingly, he is not entitled to relief.

CONCLUSION

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[10] The Petitioner was represented by a different attorney on his reply brief than in his principal brief and at the evidentiary hearing. In the reply brief, the Petitioner requests that, should we conclude that he is not entitled to relief, we should find that post-conviction counsel was ineffective for failing to present adequate evidence at the evidentiary hearing in support of his claim. However, we decline this invitation as a petitioner is not entitled to effective assistance of counsel in post-conviction proceedings. See House v. State, 911 S.W.2d 705, 712 (Tenn. 1995).