IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2025

## ELIJAH GARRISON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-23-100      Roy B. Morgan, Jr., Judge**

_____

### No. W2024-01005-CCA-R3-PC

_____

The Petitioner, Elijah Garrison, appeals from the denial of his petition for post-conviction relief. He contends that his trial counsel was ineffective for failing to (1) argue to the jury that an eyewitness's testimony was unreliable because the eyewitness's initial statements to police were "essentially coerced" and (2) failing to present and argue to the jury additional evidence that, in his view, contradicted the State's proof. After review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TOM GREENHOLTZ, JJ., joined.

Samuel W. Hinson (on appeal), Lexington, Tennessee, for the appellant; and Elijah Garrison, Pro Se (at post-conviction hearing), Mountain City, Tennessee.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls and Shaun A. Brown, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

#### I.      FACTUAL AND PROCEDURAL HISTORY

##### A.      Trial and Direct Appeal

The Petitioner was convicted by a Madison County jury of first degree murder and unlawful possession of a firearm. *State v. Garrison*, No. W2021-01064-CCA-R3-CD, 2022 WL 17498889, at *1 (Tenn. Crim. App. Dec. 8, 2022), *no perm. app. filed*. These

convictions stemmed from the Petitioner's shooting the unarmed victim from a vehicle, exiting the vehicle to approach the victim, and standing over the victim as he lay dying to shoot him several more times. *Id.* at *1-2. The proof introduced at the Petitioner's trial featured the testimony of Tierra Wilson, who was the driver of the vehicle involved in the shooting, and A.A.,[1] who was seated in the back seat behind Ms. Wilson when the shooting occurred. *Id.* at *2-3. After the shooting, the Petitioner got back in the vehicle, instructed Ms. Wilson to drive away, and threw the gun out of the moving vehicle into a ditch. *Id.* At the Petitioner's direction, the three individuals immediately left Madison County and eventually drove to Knoxville, Tennessee, where the Petitioner instructed A.A. to leave with the vehicle because it was stolen. *Id.* at *2.

A.A. drove the vehicle to Cookeville, Tennessee, where he contacted his mother for help and told her what had occurred. *Id.* at *2, *4. After his mother informed local law enforcement that her son had witnessed a homicide, she traveled to Cookeville with two members of the Jackson Police Department.[2] *Id.* A.A. told these investigators what he had witnessed, identified the Petitioner as the shooter and Ms. Wilson as the driver, and provided a detailed description of the distinctive-looking gun used in the shooting, as well as where he had seen the Petitioner throw it from the vehicle. *Id.* Based on the information provided by A.A., law enforcement was able to recover the gun used in the shooting, match it to the casings and bullets recovered at the scene of the victim's death, and later connect it to the Petitioner based on photographs of him holding it that were obtained from his cell phone. *Id.* at *2, *4. Law enforcement also used information provided by A.A. to later locate and interview Ms. Wilson, whose independent account of the shooting matched the information provided by A.A., and the Petitioner was thereafter arrested for the victim's murder. *Id.* at *4. Both individuals testified consistently with one another at the Petitioner's trial. *Id.* at *1-3.

In addition to the testimony of Ms. Wilson and A.A., a resident of the area where the victim was killed also witnessed the shooting, and he described the shooter as a tall young man with "some form of dread[s.]" *Id.* at *1. At the time of the murder, this description matched the Petitioner; by contrast, A.A. was approximately five feet, five inches tall and had an "afro." *Id.* at *1, *5. An area surveillance video recording was also received as evidence, which depicted the vehicle entering and leaving the scene, as well as the shooting itself. *Id.* at *1.

---

[1] Because the witness was a minor at the time of the shooting, we will refer to him by his initials.

[2] The record indicates that the vehicle A.A. was driving had run out of gas, leaving him stranded there.

On direct appeal, the Petitioner challenged only the murder conviction on the basis of insufficient evidence due to a lack of corroboration of accomplice testimony. *Id.* This court affirmed the Petitioner's conviction in an opinion issued on December 8, 2022, holding that the evidence was sufficient to support it and concluding that neither Ms. Wilson nor A.A. were acting as the Petitioner's accomplices. *Id.* at *6-7.

### B.    Post-Conviction Proceedings

Prior to filing his petition for post-conviction relief, the Petitioner filed a pro se pleading entitled "Motion For New Trial Based on Newly Discovered Evidence" on April 11, 2023. The disposition of this motion is not entirely clear from the record, but its filing provides context for the subsequent post-conviction proceedings. In this pleading, the Petitioner contended that following his trial, he received a police video recording of A.A.'s mother speaking on the phone with A.A. during the mother's initial contact with law enforcement and that the recording had been withheld from the defense at trial. The Petitioner asserted that A.A. indicated to his mother in this recording that he was not actually present at the scene of the homicide.

On December 27, 2023, the Petitioner filed a pro se petition for post-conviction relief. The Petitioner's notarized certificate of service lists the date of mailing as December 7, 2023. In this petition, the Petitioner alleged that he received ineffective assistance of counsel, both pretrial and at trial,[3] and further asserted that the prosecutor committed a *Brady*[4] violation by withholding the video recording referenced above from the defense.

On March 22, 2024, the Petitioner's appointed post-conviction counsel filed a supplemental brief in support of the petition for post-conviction relief that contained six grounds for relief; some of these grounds were new, and others restated grounds previously asserted in the pro se petition. Specifically, as relevant to this appeal, the Petitioner alleged (1) that trial counsel was ineffective for failing to suppress A.A.'s statements to police on grounds they were coerced and (2) that trial counsel was ineffective for failing to impeach A.A. with the video recording. Ultimately, the post-conviction court granted the

---

[3] Pretrial counsel was relieved after the Petitioner's suppression hearing, and new counsel was appointed to represent the Petitioner at trial.

[4] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

Petitioner's request to represent himself at the post-conviction hearing held on June 20, 2024.

The Petitioner presented testimony at the hearing from pretrial counsel, trial counsel, and the prosecutor at trial. The Petitioner's main focus throughout the hearing was his contention that A.A. was not in "that car" and was "nowhere around when the crimes happened." On this point, the Petitioner relied heavily on the video recording that captured the conversations between A.A. and his mother. Notably, based on the other evidence introduced, it appears that at the time the police recorded these conversations between A.A. and his mother, A.A. was in possession of the vehicle in question in Cookeville and his mother had gone to the police and initiated this contact based on A.A.'s telling her that he had witnessed a homicide.

Pretrial counsel testified that he represented the Petitioner for approximately two to three weeks, most notably at the hearing to suppress A.A.'s identification of the Petitioner as the shooter. Pretrial counsel could not recall whether he himself filed for discovery, whether or when he received the video recording in question, or whether he himself had watched the video. The Petitioner repeatedly used portions of the transcript of the suppression hearing, the order denying the suppression motion, and portions of the video in question to refresh pretrial counsel's memory, though his recollection remained largely unchanged. After a segment of the video was played multiple times, pretrial counsel acknowledged that he heard A.A. say to his mother, "I know I haven't been in that car." When asked whether he would have used this recording to impeach A.A. at the suppression hearing, pretrial counsel responded that he believed A.A. had encountered law enforcement while in the very same car shortly after making this statement. Pretrial counsel acknowledged that he did not play the video at the suppression hearing, but he did not know whether he would have used it to impeach A.A. and maintained that he did not recall whether or when he received or reviewed the video itself.

Trial counsel testified that he represented the Petitioner at trial and conducted a rigorous cross-examination of both A.A. and Ms. Wilson. Trial counsel was adamant that each of the now complained of decisions he made in his representation of the Petitioner were strategic. He stated that the evidence of the Petitioner's guilt was "overwhelming" because the eyewitnesses testified consistently with one another, their prior statements led investigators to locate the firearm used in the shooting, and investigators had established the firearm's connection to both the Petitioner and the casings and bullets recovered from the scene of the murder. Trial counsel emphasized that his strategy had been to cast doubt on the efficacy of the investigation by bringing up law enforcement's inability to charge the Petitioner when he was a suspect in a separate homicide. Trial counsel additionally

noted that he would not have called A.A.'s mother to testify as a witness because her only knowledge of the case came from A.A., making any testimony from her inadmissible hearsay. Trial counsel also clarified that, regardless of whether he had received the police video recording of A.A.'s mother prior to trial, he would not have used it at trial. He believed it would not have made any difference in the outcome of the case. This decision was based in part on his considering all of the evidence together, rather than each piece in isolation.

The prosecutor testified that his office had an "open-file" discovery policy in the Petitioner's case, and defense counsel was provided an opportunity to view and make copies of everything discoverable that was in the State's file, which included the video recording in question. In response to questioning about the State's duty to provide exculpatory evidence to the defense, the prosecutor stated that he did not believe the video recording contained exculpatory evidence. After a portion of the recording was played, the prosecutor stated that, based on the context of the surrounding conversation in the recording, he believed that A.A.'s statement about not being "in that car when the crime happened" was an attempt to make it clear that he did not steal the car or participate in it being stolen. The prosecutor supported this interpretation by emphasizing the surrounding sentences, wherein A.A.'s mother informed her son that the investigators wanted to come get the car and they knew he did not steal it. When pressed by the Petitioner to answer whether A.A. was in the car at the time of the homicide, the prosecutor stated that the video could "speak for itself" as to what A.A. did or did not say. The prosecutor further testified that it would have been very difficult for him to have withheld this video from the defense because it was contained on the same "jump drive" as all of the other media files provided to the defense in this case.

The post-conviction court found that the Petitioner failed to meet his burden of proof with regard to any of his claims and denied the petition by written order. In so doing, the post-conviction court accredited the testimony of both trial counsel and the prosecutor. As for the issues relevant to this appeal, the post-conviction court found that trial counsel was not ineffective for failing to impeach A.A. with the statement he made to his mother on the phone that was captured by the video recording. The post-conviction court reasoned that A.A. was thoroughly cross-examined at trial and that, even if trial counsel never received the video recording, it would not have made "any difference in the outcome of the trial based upon the overwhelming evidence in this matter including testimony of the two eyewitnesses." The post-conviction court also found that the State did not violate *Brady* by failing to provide the defense with the video recording, citing the prosecutor's testimony that the State had an open-file discovery policy and that the recording "would have been on the same thumb drive used during the trial," as well as trial counsel's testimony that he

would not have used the recording to impeach A.A. Again, the post-conviction court noted that the statement would not have made "any difference in the outcome of the trial based upon the overwhelming evidence in this matter including testimony of the two eyewitnesses." Finally, the post-conviction court found that the Petitioner had "failed to present any evidence regarding any other allegations that may [have been] in the Petitioner's pleadings[.]" This timely appeal followed, and appellate counsel was appointed to represent the Petitioner.[5]

## II.    ANALYSIS

On appeal, the Petitioner argues that the post-conviction court erred by denying his petition upon its finding that he received the effective assistance of trial counsel. The Petitioner asserts that trial counsel was ineffective for failing to argue to the jury that A.A.'s statement to the police was "essentially coerced" and that his subsequent testimony was therefore unreliable. The Petitioner also contends that trial counsel was ineffective for failing to present the video recording of A.A.'s conversation with his mother and to argue to the jury that it proved A.A. was not present at the scene of the shooting. The State responds that the appeal should be dismissed as the petition was untimely filed. In the alternative, the State asserts that the Petitioner's claims regarding trial counsel's lack of argument are waived due to his failure to raise them in the post-conviction court, and any assertion that the introduction of the disputed evidence would have changed the outcome of the case is without merit.

### A.    Timeliness of the Petition

The State contends that the post-conviction court was without jurisdiction to consider this petition, as it was untimely filed.[6] Under Tennessee Code Annotated section 40-30-102(a), a post-conviction petition must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." The statute provides that the limitations

---

[5] Following the appointment of counsel, and most recently on May 5, 2025, the Petitioner lodged several pro se motions in connection with this appeal. To the extent these pleadings have not already been addressed by written order of this court, the Petitioner's outstanding requests are hereby denied based on his being represented by counsel. *See Lovin v. State*, 286 S.W.3d 275, 284 (Tenn. 2009) (noting that persons represented by counsel may not simultaneously engage in self-representation).

[6] We note that, at the time the State filed its brief, the technical record provided on appeal was missing several pages, including the signature page and certificate of service from the Petitioner's original petition. Following supplementation of the appellate record, this court was able to review it for timeliness.

period "shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." *Id.* Failure to file within the limitations period removes the case from the court's jurisdiction. *Id.* at § -102(b).

However, timely filing of certain documents prepared by, or on behalf of, pro se inmates is governed by the "prison mailbox rule":

> If a paper required or permitted to be filed pursuant to the rules of criminal procedure is prepared by or on behalf of a pro se litigant incarcerated in a correctional facility and is not received by the court clerk until after the deadline for filing, the filing is timely if the paper was delivered to the appropriate individual at the correctional facility within the time set for filing.

Tenn. R. Crim. P. 49(d)(1). Additionally, Tennessee Supreme Court Rule 28 § 2(G) states that a pro se "filing shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing." When timeliness of the filing is an issue, the burden is on the pro se litigant to prove compliance by a preponderance of the evidence. Tenn. R. Crim. P. 49(d)(3); *see also Adkins v. State*, No. E2020-01213-CCA-R3-PC, 2022 WL 122673, at *3 (Tenn. Crim. App. Jan. 13, 2022) (stating that the petitioner has the burden of showing by a preponderance of the evidence compliance with Rule 28 § 2(G)).

In this case, the incarcerated Petitioner's pro se petition for post-conviction relief was filed in the post-conviction court on December 27, 2023, nineteen days after the one-year limitations period initiated by the December 8, 2022 disposition date of his direct appeal by this court. However, the notarized certification on the final page indicates that it was provided for mailing on December 7, 2023, one day within this period. Accordingly, by operation of the prison mailbox rule, we conclude that the petition was timely filed.

### B.      Ineffective Assistance of Counsel

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); see *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by

- 7 -

the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). However, "[i]ssues not addressed in the post-conviction court will generally not be addressed on appeal." *Walsh v. State*, 166 S.W.3d 641, 645-46 (Tenn. 2005) (first citing *Rickman v. State*, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); then citing *State v. White*, 635 S.W.2d 396, 397-98 (Tenn. Crim. App. 1982)). Moreover, "an issue raised for the first time on appeal is waived." *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (citing *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996)). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields,* 40 S.W.3d at 456. Because they relate to mixed questions of law and fact, the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones

based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that[,] but for counsel's errors[,] the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Both of the Petitioner's ineffectiveness claims on appeal contain the allegation that trial counsel was ineffective for failing to argue certain topics to the jury: (1) that A.A.'s testimony was unreliable because his initial statements to police were "essentially coerced" and (2) that the video recording contradicted the State's proof. However, in the court below, the Petitioner did not include in his pro se or amended pleadings any ineffectiveness allegations regarding trial counsel's *failure to argue* these points to the jury; he likewise did not present proof of these allegations during the hearing; and the post-conviction court did not make any ruling regarding the same. As noted by the State, these new allegations on the issue of ineffective assistance of trial counsel are waived for the Petitioner's failure to preserve them in the post-conviction court. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." (citation omitted)). The Petitioner made numerous allegations regarding trial counsel's ineffectiveness in his petition, put on testimony to support his contentions, and argued in support of those specific contentions at length during the post-conviction hearing. The post-conviction court separated and addressed each of the Petitioner's contentions in its oral ruling at the hearing and memorialized its findings in a written order. At no stage of these proceedings was trial counsel's inadequate argument raised, developed in any meaningful way, or otherwise preserved for appellate review. *See id.* Waiver is the result.

To the extent the Petitioner contends that trial counsel was ineffective for *failing to admit* the video recording of A.A.'s conversation with his mother at trial in an effort to show that A.A. was not present at the scene of the shooting, this claim is without merit. First, the Petitioner cannot show deficient performance. Trial counsel testified explicitly that, regardless of whether he had possession of it, he would not have used the video recording at trial. In so testifying, trial counsel emphasized that this was a strategic

decision that stemmed from not looking at the evidence "in isolation." As noted above, speculating that a different strategy might have produced a more favorable outcome for the Petitioner is not a basis to find that counsel's performance was deficient. *Rhoden*, 816 S.W.2d at 60. Additionally, trial counsel's testimony at the post-conviction hearing—which took place several years after the trial itself—was detailed regarding his interpretation of the evidence and firm on the point that he had been more than adequately prepared to defend the case at trial. We conclude that his strategic decision on this point was based on such preparation and is thus afforded deference on appeal. *See Cooper*, 847 S.W.2d at 528. Moreover, the prosecutor's testimony established that the video was not helpful to the Petitioner because the statements therein pertained to the theft of the vehicle, not the murder. Not only does this further support trial counsel's strategic decision not to use the video in his defense, but the post-conviction court also accredited the testimony of both of these witnesses, demonstrating its agreement with the propriety of this assessment of the evidence. The Petitioner has failed to establish that trial counsel's performance was deficient, as required under *Strickland*.

Second, the Petitioner has not established a reasonable probability that introduction of the video would have resulted in any difference in the outcome of his trial. *See Vaughn*, 202 S.W.3d at 116. Just as trial counsel testified regarding his review of the evidence, this court does not look at the components of the record on appeal in isolation. Instead, we must consider that (1) the entire conversation depicted in the video recording was prompted by A.A. relating to his mother that he had witnessed a homicide; (2) he believed the car he was then in possession of was stolen; and (3) absent outside intervention, he would still be in possession of that car if and when he was encountered by law enforcement. There is simply no reasonable interpretation of this recording that, when viewed in concert with the overwhelming evidence of the Petitioner's guilt, would lead a rational trier of fact to believe that A.A. did not witness the murder. He was the first person who provided information to law enforcement, which led investigators to physical evidence that supported his account of the murder committed by the Petitioner, and his statement was corroborated by another eyewitness—as was his presence in the vehicle at the time of the murder. As such, the Petitioner cannot show that he was prejudiced by trial counsel's decision not to introduce the video recording at trial, because he has not established a "reasonable probability" that the outcome would have differed had he done so. *See Strickland*, 466 U.S. at 694. The Petitioner is not entitled to relief on this basis.

### III. CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the post-conviction court.

 s. Kyle A. Hixson
KYLE A. HIXSON, JUDGE