IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2017 Session

**STATE OF TENNESSEE v. BRUCE WAYNE SUTTON**

**Appeal from the Circuit Court for Lincoln County**
**No. 2014-CR-135    Forest A. Durard, Jr., Judge**

_____

**No. M2016-00284-CCA-R3-CD**

_____

Defendant, Bruce Wayne Sutton, pled guilty to attempted initiation of a process to manufacture methamphetamine and received a sentence of nine years and six months. As part of his plea agreement, Defendant reserved two certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A) with regard to the trial court's denial of his motion to suppress evidence obtained during a warrantless search of a residence. Upon our review of the record and applicable authorities, we determine that based upon his disclaimer of interest in the property, Defendant was without standing to complain about the search. Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Elizabeth A. Russell (on appeal), Franklin, Tennessee, and M. Wesley Hall IV (at hearing), Unionville, Tennessee, for the appellant, Bruce Wayne Sutton.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert Carter, District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On June 19, 2013, officers with the Lincoln County Sheriff's Department conducted a warrantless search of a residence on Village Park Drive in Fayetteville, Tennessee. As a result of evidence discovered during that search, Defendant was indicted by the Lincoln County Grand Jury of one count of initiating a process to manufacture methamphetamine, one count of promotion of methamphetamine manufacture, one count of possession of .5 grams or more of methamphetamine for sale, one count of possession of .5 grams or more of methamphetamine for delivery, and one count of possession of drug paraphernalia.[1]

The procedural history of this case is quite extensive and complicated given the fact that Defendant was represented by no less than four attorneys in the trial court, the case was continued numerous times, some documents were filed under different case numbers because of the superseding indictment, and Defendant filed multiple pro se motions relating to both this case and two other unrelated cases. For the sake of clarity, we will attempt to summarize the procedural history and hearing testimony with regard to only the issue presently before this Court under the certified questions of law, namely the suppression of evidence obtained from the search of the residence on Village Park Drive.

On February 20, 2014, Defendant, represented by the Public Defender's Office, filed a motion to suppress the evidence from the search on the grounds that his wife's consent to search was invalidly obtained over Defendant's refusal. On April 3, 2014, retained counsel filed a motion to reinstate and resume the motion to suppress. This motion references a hearing that was commenced on March 4, 2014, during which Defendant supposedly withdrew his motion to suppress, but no transcript of that hearing appears in the record.[2] The trial court denied the motion to reinstate on May 20, 2014. After the issuance of the superseding indictment and the appointment of subsequent counsel, the trial court allowed Defendant to renew any previously filed motions, including the motion to suppress. On January 6, 2015, subsequent counsel filed a motion to suppress, contending that Defendant did not consent to the search and that his wife's consent was invalid. Subsequent counsel eventually withdrew and trial counsel was appointed. After Defendant filed a plethora of pro se motions while represented by

---

[1] Case number 2014-CR-135 is a superseding indictment issued on September 23, 2014. The original indictment, case number 2013-CR-128, does not appear in the record on appeal.

[2] We remind Defendant that he, as the appellant, bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," *see* Tenn. R. App. P. 24(b).

counsel, the trial court allowed Defendant to represent himself over the objection of the State, appointing trial counsel as advisory counsel. An evidentiary hearing was held on the motion to suppress on December 18, 2015.[3]

At the evidentiary hearing, Detective Mike Pitts testified that he was a narcotics investigator with the Lincoln County Sheriff's Department. Detective Pitts noticed Defendant's name on a list of pseudoephedrine purchases. The list indicated two addresses for Defendant, one in Hamilton County and one on Village Park Drive in Lincoln County. Detective Pitts learned that Defendant had prior methamphetamine-related charges. The report also indicated that Heather Hill[4] resided at the Village Park address. Detective Pitts stated that he was not aware of Ms. Hill's relationship with Defendant at the time.

Detective Pitts went to the residence on Village Park Drive to conduct a knock and talk "around lunchtime" on June 19, 2013. As Detective Pitts parked his vehicle, Ms. Hill exited the front door of the residence and walked toward her vehicle parked in the driveway; Detective Pitts observed a child inside of the vehicle. Detective Pitts identified himself and asked if Defendant was there. Ms. Hill indicated that Defendant was inside the house, and Detective Pitts asked her to bring him outside. Defendant came outside and spoke to Detective Pitts. Detective Pitts identified himself, explained why he was there, and asked for consent to search the residence. According to Detective Pitts, Defendant responded that "he could not consent to a search of the residence, due to the fact it was not his residence to allow [Detective Pitts] to search." Because Defendant "also provided information that there could possibly be items inside the residence to make meth with," Detective Pitts sought consent to search from Ms. Hill. Ms. Hill agreed and signed a consent to search form, which was entered into evidence.

---

[3] At the suppression hearing, the trial court stated that "the motion to suppress that I have is stamp filed October 26th of this year," which was apparently filed under the original case number rather than the superseding case number. However, while there are numerous references in the record to a pro se motion to suppress, we can find no such motion filed after January 6, 2015, specifically addressing the suppression of evidence found during the allegedly unconstitutional search. However, the issue litigated at the suppression hearing appears to be the same as the issue presented in both the February 20, 2014 and January 6, 2015 motions. Additionally, the trial court's order thoroughly details its findings of fact and conclusions of law. Therefore, we do not deem the issue waived for failure to provide an adequate record on appeal. *See Ballard*, 855 S.W.2d at 560.

[4] The woman identified by Detective Pitts as Heather Hill testified at the suppression hearing and identified herself as Heather Hill Sutton, Defendant's wife. However, the consent form entered into evidence shows that she signed her name as Heather Lynn Hill. Therefore, for consistency, we shall refer to her as Ms. Hill throughout this opinion. We mean no disrespect thereby.

Detective Pitts then entered the residence with Ms. Hill, Defendant, and Deputy Patrick Murdock, who had arrived at the residence a few minutes after Detective Pitts. Detective Pitts was told that no one else was in the residence. Defendant and Ms. Hill remained in the living room with Deputy Murdock. Detective Pitts entered the master bedroom and discovered a man sitting on the bed; the man was later determined to be Mark Kindred, who was charged as a codefendant. Detective Pitts brought Mr. Kindred into the living room and then returned to search the bedroom because he smelled "an odor of chemicals . . . close to the bed." Detective Pitts discovered the evidence at issue in the master bedroom and bathroom, including lithium batteries, wet coffee filters with a "fuel smell," and "a jar that contained a liquid that you could see methamphetamine sunk to the bottom in." Ms. Hill denied having ever seen those items before and denied any knowledge of methamphetamine being produced in the house. As Defendant was being arrested and escorted out of the house, he "sarcastically" thanked Ms. Hill for consenting to the search and stated that "she was putting him back in prison."

During cross-examination, Defendant attempted to enter his marriage certificate into evidence to show that Ms. Hill was his wife and that her name was in fact Heather Sutton. Detective Pitts testified that he reviewed the report on pseudoephedrine purchases for people in Lincoln County who make multiple purchases. The report listed the person's name, driver's license number, date of birth, and known associated addresses. Detective Pitts testified that he went to the Village Park address to speak to Defendant because that was the only listed address in Lincoln County. Defendant entered the arrest warrant into evidence which listed his address as the residence on Village Park Drive. Detective Pitts agreed that he obtained that information from Defendant's driver's license after he was arrested. Detective Pitts testified that Defendant was not under arrest at the time Ms. Hill signed the consent form and the officers conducted the search. Detective Pitts denied threatening Ms. Hill in order to obtain her consent to search. Detective Pitts agreed that there were no exigent circumstances. Detective Pitts testified that the evidence was ultimately destroyed due to its volatility.

When Defendant attempted to ask Detective Pitts about the presence of his belongings inside the house, such as male clothing or photographs, the State objected to the question being irrelevant and outside the scope of the consent issue. The trial court overruled the objection as follows:

Well, you know, that kind of gets to a standing issue. I think it's relevant whether it's his house or not.

Here's the problem. You've got - - whether it's your house or not, it's called the doctrine of disclaimer.

And that's a big problem in this case.

- 4 -

Deputy Patrick Murdock testified that in June of 2013, he worked as a canine handler with the Lincoln County Sheriff's Department. On June 19, 2013, Deputy Murdock went to the Village Park residence with his canine to assist Detective Pitts. When Deputy Murdock arrived, Detective Pitts was in the yard and Defendant was "about to come out, or he might have already been on the porch." Ms. Hill was also present; Deputy Murdock did not know her relationship to Defendant. Deputy Murdock did not observe anyone inside the vehicle in the driveway. Deputy Murdock's canine remained inside of his patrol vehicle.

Deputy Murdock observed Detective Pitts talking to Defendant and asking for consent to search the house. As to Defendant's response, Deputy Murdock testified, "I remember he said that he couldn't give consent. And I believe he said that he maybe didn't live there. That for whatever reason, he couldn't give consent to search the house." Detective Pitts then went to Ms. Hill and obtained written consent to search the house while Deputy Murdock stood by Defendant on the porch. Deputy Murdock did not remember if Defendant said anything but described him as "looking in their direction, and kind of basically like kind of telling her, maybe without telling her, don't do this. I mean, his body language and, you know, what he was doing gave me the impression that he was trying to say don't sign it." The following colloquy then occurred:

> [Prosecutor]: And to make sure I'm clear on your testimony. Did you hear what the [D]efendant told [Detective] Pitts, when [Detective] Pitts asked permission to search the house?
>
> [Deputy Murdock]: He said that he couldn't give consent. I remember that.
>
> [Prosecutor]: Did you say he could not give consent or he would not give consent?
>
> [Deputy Murdock]: One of the - - I'm not sure.

Deputy Murdock did not remember hearing Defendant explain to either himself or Detective Pitts who the house belonged to or why Defendant was staying there.

Deputy Murdock denied saying anything to Ms. Hill about her children, anything about the Department of Children's Services ("DCS"), or anything to attempt to influence her to sign the consent form. Deputy Murdock signed the consent form as a witness. While Detective Pitts searched the residence, Deputy Murdock remained in the living room "to make sure, you know, everybody kind of stayed where they were." Defendant sat on a couch in the living room along with the person Detective Pitts discovered in the

bedroom. At the conclusion of the search, both Defendant and the other person were placed into custody.

On cross-examination, Deputy Murdock testified that he did not remember having Defendant's driver's license but that it would not surprise him if one of the officers had it in order to run Defendant's information through their database. Deputy Murdock could not remember if Ms. Hill signed the consent form by the vehicles or by the front porch. Deputy Murdock remembered Defendant's "making some kind of gestures . . . . [t]rying to get her maybe not to do it, not to sign it." Deputy Murdock agreed that Defendant did not appear to want Ms. Hill to sign the consent form and that Defendant did not sign it himself. Deputy Murdock explained:

> You [Defendant] were saying that you couldn't give consent for whatever reason, it was Heather Hill's house. And [Detective] Pitts went and talked to her, with it being her house. And she gave consent to search the house.

Deputy Murdock denied mentioning Ms. Hill's children or hearing "any comments about threatening to arrest everybody if they didn't get the consent paper signed[.]"

Defendant called Ms. Hill to testify, and she identified herself as his wife, Heather Hill Sutton. She testified that when Detective Pitts arrived on June 19, 2013, she had just pulled into the driveway and parked in front of the garage. She explained that she was going to an appointment but had returned to the house to get something. She could not remember where Detective Pitts parked his vehicle but believed that it was in the driveway. Ms. Hill testified that she purchased the home on Village Park Drive before she married Defendant, that Defendant was living in the home in June of 2013, and that Defendant kept at the house his clothing and "most of [his belongings], what [he] didn't have at [his] mother's." Ms. Hill could not remember why she had signed the consent form with the name Heather Hill instead of Heather Sutton but explained that she had "been signing that name for 15 years." Ms. Hill stated that "the whole day [was] a blur" and that she could not remember why she signed the consent form other than the fact that it was presented by a police officer. Ms. Hill denied that any threats or promises were made to get her to sign the form.

Defendant asked Ms. Hill if she had told him over the phone that Detective Pitts threatened to take her kids away if she did not sign the consent form, which Ms. Hill denied. Defendant attempted to enter into evidence a letter written by Ms. Hill to his former attorney, but she could not recall if the letter pertained to this case or a case out of Hamilton County. Defendant asked Ms. Hill about several statements she supposedly made during phone calls with him, specifically that Detective Pitts told her that she would sit there until he got a warrant if she did not sign the consent form, that she was worried that her kids would be taken away, that Detective Pitts bullied her, and that

Defendant told her not to let the officers into the house. Each time, Ms. Hill responded that she could not remember "if it's been in the last two years."

While Defendant was attempting to play recorded phone calls to impeach Ms. Hill's testimony, the trial court stated that it "question[ed] whether this is relevant" based on the facts in evidence thus far. The trial court noted that Detective Pitts did not need probable cause to conduct a knock and talk. The trial court also noted that once Defendant "[d]isclaimed possessory interest in the house," Detective Pitts went to Ms. Hill to obtain consent to search. The trial court then stated, "the question in my mind is, all right, once he disclaimed the ownership or any possessory interest in the property, then it doesn't matter whether her consent was overborne by anything that [Detective] Pitts did, because [Defendant] disclaimed his interest. So therefore, he lost his standing."

After Defendant played a recording of one of the recorded phone calls, Ms. Hill still did not remember making any of those statements. She explained that she had been in a car wreck and "had memory loss pertaining to everything." She agreed that Defendant did not tell her what to say on the phone call and that it was her voice in the recording. Ms. Hill stated that she told Defendant what she thought he wanted to hear and that she had read about illegal searches and seizures in a law book. Ms. Hill stated that she lied to Defendant during the phone call because she "didn't want your sister or your mother burning my house down."

Defendant then called Chelsea Seibers, his step-daughter, to testify. Ms. Seibers stated that when Detective Pitts pulled up, she was in the car with her two brothers. Detective Pitts pulled up behind the car. Ms. Seibers was sitting in the front passenger seat and the engine was not running. Ms. Seibers explained that her mother, Ms. Hill, was going to take her to a disability hearing in Tullahoma but that they got a call to return to the house. Ms. Seibers agreed that they were running late for the appointment. Ms. Seibers testified that she was fifteen at the time and that she was scared when the police showed up. Ms. Seibers agreed that Defendant was inside the house when Detective Pitts pulled up and that Detective Pitts spoke to her mother to bring Defendant outside. Ms. Seibers denied seeing Defendant's driver's license that day.

The trial court asked Defendant about the relevance of Ms. Seibers's testimony. Defendant explained that he wanted to introduce a phone call in which she stated that she had seen his license and that his license listed his address as Village Park Drive. The trial court stated, "it doesn't seem to me that that issue is contested that your driver's license said . . . Village Park Drive on it." Ms. Seibers testified that she saw Deputy Murdock exit the house with something in his hands but that she could not see what it was from inside of the car.

Defendant then recalled Deputy Murdock to ask if he placed a call to dispatch while he had Defendant's license. The trial court again stated that the address on the license was not a contested issue. Defendant explained that he was trying to impeach the officers' testimony that they did not know the Village Park residence was his home address.

Defendant then testified on his own behalf. He denied telling Detective Pitts that he did not live at the Village Park residence. He stated that Detective Pitts asked him if "there [were] any chemical or methamphetamine components in the house." He stated that Detective Pitts did not show him the consent form or allow him to read it. Defendant explained that when the consent form was signed, he and his wife were sitting on the front porch and Detective Pitts and Deputy Murdock were standing over them and that his three step-children were in the car less than fifteen feet away. When Detective Pitts asked Defendant to sign the consent form, Defendant responded "No, I will not sign the consent paper." Defendant stated that Detective Pitts threatened that, if the consent form was not signed, he was going to call DCS on Ms. Hill's children or force them to stay on the porch while he obtained a warrant. Defendant stated that when Detective Pitts first arrived, he asked Defendant for his identification, and Defendant gave Detective Pitts his driver's license with the Village Park address on it. Defendant stated that while they were sitting on the front porch, he asked his wife not to sign the consent form. Defendant stated that he did not feel free to leave either while the consent form was being signed or while he was sitting on the couch during the search. Defendant stated that he never got his license back and that he had to go to the "DMV" to get another one.

On cross-examination, Defendant testified that even though he did not know Detective Pitts prior to that day, Detective Pitts was out to get him "[b]ecause he's a cop." Defendant believed that Detective Pitts was lying about what happened that day and that Deputy Murdock, Ms. Hill, and Ms. Seibers had all lost their memory about what happened. Defendant stated that while he was sitting on the front porch with the officers standing over him, he felt threatened. Defendant did not feel coerced because when Detective Pitts asked him to sign the consent form, Defendant said "no." When Detective Pitts asked Ms. Hill to sign the form, Defendant believed that she was being threatened and coerced. Defendant told Ms. Hill not to sign the form.

The trial court filed a written order denying the motion to suppress on January 5, 2016. The trial court accredited the testimony of Detective Pitts that Defendant stated he could not give consent to search because it was not his residence. The trial court concluded that Defendant did not have standing to challenge the search because he disclaimed his interest in the property, citing *State v. Ross*, 49 S.W.3d 833 (Tenn. 2001), and *Christopher A. Davis v. State*, No. M2005-02146-CCA-R3-PC, 2007 WL 1174903 (Tenn. Crim. App. Apr. 19, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007). The trial court noted that had Defendant simply denied consent without disclaiming a possessory

interest, Ms. Hill's consent to search would have been invalid against Defendant under *Georgia v. Randolph*, 547 U.S. 103, 120 (2006) (holding that consent by one resident cannot justify a warrantless search of a dwelling over the express refusal of a present co-resident).

Defendant then pled guilty to the amended charge of attempted initiation of a process to manufacture methamphetamine, a class C felony, with an agreed sentence of nine years and six months to be served at 35%. Defendant's sentence was to run concurrently with his sentences in two unrelated cases. The remaining counts of the indictment were dismissed. At the plea acceptance hearing on January 5, 2016, advisory counsel stated that "there is another material component to this plea agreement; and that is, that [Defendant has] two certified questions of law that he'd like to reserve for appeal." The trial court stated that it would "approve the certification of the question of law regarding the search." All of the parties agreed that the question was dispositive because suppression of the evidence obtained during the search would result in dismissal of the prosecution. Defendant also referenced an issue with regard to the destruction of the evidence and his inability to independently test it, but the trial court stated that it did not believe that issue was dispositive. At the conclusion of the hearing, the trial court agreed to delay entering final judgments in order to allow advisory counsel time to draft an order containing the certified questions of law with the assistance of appellate counsel.[5] However, the judgment forms show that they were entered and filed on January 5, 2016, and do not contain any reference to the certified questions of law.

On January 21, 2016, Defendant filed a pro se motion to withdraw his guilty plea on the ground that the judgment forms did not contain the agreed upon certified questions of law and that he entered his guilty plea under duress. On February 4, 2016, the trial court filed an order, pursuant to Tennessee Rule of Administrative Procedure 37(b), preserving the following certified questions of law for review:

1.) Whether the trial court properly determined the [D]efendant abandoned his privacy or possessory interest in his residence under the "doctrine of disclaimer" and, thereby, allowing the use by the State of all evidence seized in the residence for prosecution for initiation to manufacture methamphetamine, overruling [D]efendant's "Motion to Suppress."

2.) Whether the tr[ia]l court properly determined that the warrantless (consent) search by law enforcement of the home of the [D]efendant was proper as required by the 4th and 14th Amendments to the United

---

[5] This Court eventually allowed Defendant's original appellate counsel to withdraw and appointed current appellate counsel.

States Constitution and Article I, sections 7 and 8 of the Tennessee Constitution[.]

The order stated that the trial court, the State, and Defendant were all of the opinion that the certified questions were dispositive of the case. Defendant, through appellate counsel, filed a notice of appeal on February 8, 2016.

On February 16, 2016, the trial court held a hearing on Defendant's motion to withdraw his guilty plea, during which the trial court stated that the judgments were actually entered on February 8 rather than on January 5, 2016.[6] The trial court denied the motion to withdraw the guilty plea, finding that Defendant did not enter his plea under duress due to lack of sleep or missed medications. The trial court noted that the certified questions with regard to the constitutionality of the search had been preserved and reiterated that the issue with regard to the subsequent destruction of the evidence was not dispositive.[7] On June 24, 2016, the trial court entered an order setting aside a previously entered waiver of appeal that was inadvertently entered in this case. *See* Tenn. R. Crim. P. 36 (allowing the trial court to correct clerical errors in the record at any time).

## *Analysis*

### *Certified Questions of Law*

Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a conditional plea of guilty or nolo contendere if the defendant reserves, with the consent of the State and the trial court, the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

---

[6] Perhaps because of this confusion over the actual filing date of the final judgments in this case, the State has not asserted that the notice of appeal was untimely. *See* Tenn. R. App. P. 4(a). Regardless, the notice of appeal is not jurisdictional in criminal cases and may be waived in the interest of justice. *Id.*

[7] On February 17, 2016, Defendant filed an amended motion to withdraw his plea in order to add the case numbers from his other unrelated cases, which the trial court had refused to consider at the February 16 hearing. The amended motion was denied April 19, 2016.

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A). For a certified question to be dispositive, "this [C]ourt must either affirm the judgment or reverse and dismiss. An issue is never dispositive when we might reverse and remand." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

The Tennessee Supreme Court further detailed the requirements for certified questions of law in *State v. Preston*:

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T[ennessee] R[ule of] A[ppellate] P[rocedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by [the] defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches . . ., the reasons relied upon by [the] defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. . . . Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on [the] defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the

question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn. 1988). These requirements are mandatory in order to confer jurisdiction on an appellate court following the entry of a guilty plea. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); *see also State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (rejecting "substantial compliance" with the *Preston* requirements). The burden of properly "reserving, articulating, and identifying the issue" reserved for appellate review rests solely on the defendant. *Pendergrass*, 937 S.W.2d at 838.

The judgment forms in this case make no mention of the reservation of a certified question of law, even though it was discussed at the plea acceptance hearing as being a "material component" of the agreement. The judgment is marked "Pled Guilty" rather than "Pled Guilty – Certified Question Findings Incorporated by Reference," and the only notation in the "Special Conditions" box are the words "To Serve." Likewise, the accompanying plea petition and order accepting the guilty plea make no mention of the certified questions of law. In apparent recognition of this oversight, Defendant filed a pro se motion to withdraw his guilty plea, noting that "the plea w[as] entered pre-mature as to the certified question of law." On February 4, 2016, the trial court entered a supplemental order preserving the certified questions of law and stating that the trial court, the State, and Defendant were all of the opinion that the certified questions were dispositive of the case. The notice of appeal was then filed on February 8, 2016. Our supreme court has held that even when the judgment forms do not contain or specifically incorporate the certified questions, the trial court may file a supplemental order while it retains jurisdiction prior to the filing of the notice of appeal. *Armstrong*, 126 S.W.3d at 912; *see also Pendergrass*, 937 S.W.2d at 837 (holding that the filing of the notice of appeal vests jurisdiction in the appellate court and the trial court may not thereafter amend its judgment). Therefore, the certified questions of law in this case have been properly reserved for review by this Court.

*Standard of Review*

Both of Defendant's certified questions of law relate to the trial court's denial of his motion to suppress evidence obtained from the warrantless search of the residence on Village Park Drive. In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is afforded "the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). Questions concerning the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to

the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. However, our review of the trial court's application of the law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

*Question 1: Standing and the "Doctrine of Disclaimer"*

Defendant's first certified question of law states:

1.) Whether the trial court properly determined the [D]efendant abandoned his privacy or possessory interest in his residence under the "doctrine of disclaimer" and, thereby, allowing the use by the State of all evidence seized in the residence for prosecution for initiation to manufacture methamphetamine, overruling [D]efendant's "Motion to Suppress."[8]

Both the Fourth Amendment to the United States Constitution and Article I, section 7, of the Tennessee Constitution prohibit unreasonable searches and seizures. Under both provisions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression" unless conducted pursuant to one of the exceptions to the warrant requirement. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). However, warrantless searches and seizures of abandoned property do not violate the Fourth Amendment. *See Abel v. United States*, 362 U.S. 217 (1960).

Fourth Amendment rights are personal in nature and "'may not be vicariously asserted.'" *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "[T]he state and federal constitutional protections 'are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen.'" *Ross*, 49 S.W.3d at 839 (quoting *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000)). Thus, "only at the instance of one whose own protection was infringed by the search and seizure" may evidence seized in violation of the Fourth Amendment be excluded. *Simmons v. United States*, 390 U.S. 377, 389 (1968).

---

[8] We agree with the parties that this question is dispositive because the trial court made the alternate finding that if Defendant had simply denied consent without disclaiming his interest in the property, then Ms. Hill's consent to search would have been invalid as to him; therefore, were we to disagree with the trial court on the standing issue, we would not need to remand the case for further hearing on the consent issue. *Cf. State v. Larry David Tharpe*, No. 02C01-9302-CC-00018, 1994 WL 51423, at *2 (Tenn. Crim. App. Feb. 23, 1994) (holding that validity of warrant was not properly presented for review under a certified question when the only issue litigated at the suppression hearing and ruled upon by the trial court was defendant's standing).

"The 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" *State v. Willis*, 496 S.W.3d 653, 720 (Tenn. 2016) (quoting *Rakas*, 439 U.S. at 143); *see also State v. Cothran*, 115 S.W.3d 513, 520-21 (Tenn. Crim. App. 2003).[9] "One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place where property is searched." *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (citing *Rawlings v. Kentucky*, 448 U.S. 98 (1980); *State v. Roberge*, 642 S.W.2d 716, 718 (Tenn. 1982)). In determining whether an individual's Fourth Amendment rights have been infringed, we must determine "(1) whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Ross*, 49 S.W.3d at 840 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) and *Bond v. United States*, 529 U.S. 334, 338 (2000)) (internal quotations omitted).

Because the Fourth Amendment protects people and privacy rather than places and property, "[a]ctual ownership or possession of the place or thing searched is alone insufficient to manifest a subjective expectation of privacy." *Ross*, 49 S.W.3d at 840-41 (citing *United States v. Salvucci*, 448 U.S. 83, 91 (1980)). "[A] 'person can lose his reasonable expectation of privacy in his real property if he abandons it.'" *State v. Ledford*, 438 S.W.3d 543, 553 (Tenn. Crim. App. 2014) (quoting *United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012)). The Tennessee Supreme Court has held that abandonment under the Fourth Amendment, unlike under property law, "may be shown merely by an intent voluntarily to relinquish a privacy interest." *Ross*, 49 S.W.3d at 842 (internal quotation omitted); *see also United States v. Veatch*, 674 F.2d 1217, 1220-21 (9th Cir. 1981). Abandonment is not limited to personal property; "'a person can, as he can with any other property, sufficiently manifest an intent to abandon his house.'" *Ledford*, 438 S.W.3d at 553 (quoting *Harrison*, 689 F.3d at 307); *see also State v. Michael Anthony Logan*, No. M2013-02701-CCA-R3-CD, 2015 WL 4515141, at *12 (Tenn. Crim. App. July 27, 2015), *perm. app. denied* (Tenn. Nov. 24, 2015).

In *Ross*, the Tennessee Supreme Court held that "a disclaimer or denial of ownership demonstrates sufficient intent of disassociation to prove abandonment." 49 S.W.3d at 842 (internal quotation omitted). The *Ross* court rejected the contention that

---

[9] Although the United States Supreme Court has held that the inquiry into an individual's reasonable expectation of privacy "is more properly subsumed under substantive Fourth Amendment doctrine . . . rather than on any theoretically separate, but invariably intertwined concept of standing," *Rakas*, 439 U.S. at 139, courts in this state continue to refer to this issue as one of standing. *See, e.g.*, *Willis*, 496 S.W.3d at 720; *State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996). For the sake of consistency, we shall also refer to this issue as one of standing.

- 14 -

"mere disclaimer of ownership, unlike actual abandonment of ownership, should not defeat an expectation of privacy." *Id*. at 841 (citing 5 Wayne R. LaFave, *Search and Seizure* § 11.3(a), at 128, 187 (3d ed. 1996)). Instead, the court continued to hold with "a long line of cases from this Court" as well as the "vast majority of jurisdictions . . . [that] have equated a denial or disclaimer of an interest in the object of a search with formal abandonment." *Id*.; *see id.* at 841 n.5 (citing state cases), 842 n.7 (citing federal cases). A disclaimer of ownership is tantamount to a declaration of indifference, thus negating the existence of any privacy concern. *See United States v. Zapata*, 18 F.3d 971, 978 (1st Cir. 1994). Therefore, "'when one disclaims interest in the premises or possessions searched or in the articles seized[,] he cannot question the legality of the search and seizure.'" *Ross*, 49 S.W.3d at 841 (quoting *Bowman v. State*, 362 S.W.2d 255, 257 (Tenn. 1962)).

In *Ross*, the defendant stated to police that a hotel room key found in his sock did not belong to him. *Id.* at 837. The Tennessee Supreme Court held that this "disclaimer, combined with his assertion that the room actually belonged to someone else, is sufficient evidence that he abandoned his otherwise reasonable expectation of privacy in the room." *Id.* at 842-43; *see also Harrison*, 689 F.3d at 307 ("In most cases, disclaiming ownership or physically relinquishing the property is sufficient to establish abandonment."). While the *Ross* court recognized a "list of specific factors relevant to" determining an individual's subjective expectation of privacy, it also made clear that a defendant's disclaimer of ownership "is more than just another factor to consider." 49 S.W.3d at 841-42 (citing *State v. Turnbill*, 640 S.W.2d 40, 46 (Tenn. Crim. App. 1982)). The court specifically stated that "when a defendant disclaims an interest in the object of a police investigation at the time of the search, then *this fact alone* will deprive a defendant of any expectation of privacy, irrespective of considerations such as ownership or possession." *Id.* at 841 (emphasis added) (citing *Miller v. State*, 520 S.W.2d 729, 733-34 (Tenn. 1975)). In fact, the Tennessee Supreme Court later clarified that *Ross* "carved out an exception" to the totality of the circumstances test described in *Turnbill* by "holding that when a defendant disclaims any interest in the object of a governmental search, the expectation of privacy is lost." *State v. Talley*, 307 S.W.3d 723, 731 (Tenn. 2010) (citing *Ross*, 49 S.W.3d at 840-42).

Initially, we must address Defendant's contention on appeal that the State has either waived or conceded his standing to challenge the search. The certified questions of law preserved for review in this case make no mention of concession or waiver, and neither were argued in the trial court. Therefore, this argument is outside the scope of the certified questions. *See State v. John Wayne Wright*, No. W2009-00976-CCA-R3-CD, 2010 WL 3489185, at *5 (Tenn. Crim. App. Sept. 3, 2010) (citing *Preston*, 759 S.W.2d at 650) (holding that defendant's challenge to the legality of his arrest, argued for the first time on appeal, was outside the scope of his certified questions of law), *no perm. app. filed*. Moreover, Defendant's arguments with regard to the State's supposed waiver or

- 15 -

concession of the standing issue are misplaced. Both the United States Supreme Court and the Tennessee Supreme Court have recognized that there is no logical inconsistency for the State to argue that a defendant disclaimed his privacy interest such that he lacked standing to challenge the search while simultaneously asserting that he had a possessory interest sufficient to bring criminal charges. *See Salvucci*, 448 U.S. at 88-89; *Ross*, 49 S.W.3d at 843. Additionally, while the State may not argue that a defendant lacked standing for the first time on appeal, *see Steagald v. United States*, 451 U.S. 204, 208-09 (1981); *State v. White*, 635 S.W.2d 396, 398-400 (Tenn. Crim. App. 1982), Defendant has cited no statute or case law that requires the State to file some sort of written response prior to the suppression hearing or to raise an objection at the beginning of the hearing in order to preserve its challenge to the defendant's standing. The State maintained throughout the proceedings in the trial court that Defendant had disclaimed his interest in the house, prompting the officers to seek consent to search from Ms. Hill.

Furthermore, we also disagree with Defendant's characterization of the record as showing that the issue of standing was first raised by the trial court instead of by the State. The State elicited testimony with regard to Defendant's disclaimer during its direct examination of both Detective Pitts and Deputy Murdock. Moreover, there is a reference in Defendant's own motion to proceed pro se, filed October 19, 2015, to prior testimony of the officers with regard to Defendant's disclaimer, presumably obtained during the original March 4, 2014 suppression hearing which transcript is not in the record. The prosecutor also referenced this earlier hearing during closing argument by stating, "when we first had this motion to suppress come up, our response was that the [D]efendant lacked standing to bring the motion in the first place." Therefore, even if the State failed to provide some kind of proper pre-hearing notice, Defendant had actual knowledge that his standing would be an issue.

In this case, the trial court found that when Defendant spoke to Detective Pitts, "Defendant replied he could not give permission [to search] because it was not his residence." Even though Defendant denied stating that it was not his residence, the trial court accredited the testimony of Detective Pitts. We will not reassess the credibility of witnesses or the trial court's factual findings on appeal. *See Odom*, 928 S.W.2d at 23. By disclaiming his interest in the house, Defendant "effectively gave the authorities the green light to proceed insofar as his own Fourth Amendment rights were concerned." *Ross*, 49 S.W.3d at 842 (internal quotation omitted). The fact that Detective Pitts initially chose to conduct a knock and talk at the Village Park residence because that address was associated with Defendant's name on the report of pseudoephedrine purchases does not negate Defendant's subsequent disclaimer of his interest in the property. *See United States v. Sanders*, 130 F.3d 1316, 1318 (8th Cir. 1997) (rejecting argument that that defendant did not abandon his expectation of privacy "because officers knew he was lying when he claimed not to own the brown bag"). Therefore, we affirm the judgment

of the trial court that Defendant lacked standing to challenge the search of the Village Park residence.

## *Question 2: Consent to Search*

Even though we affirm the trial court's judgment with respect to the standing issue, we will also address Defendant's second certified question of law in the case of further appellate review. Defendant's second certified question of law states:

> 2.) Whether the tr[ia]l court properly determined that the warrantless (consent) search by law enforcement of the home of the [D]efendant was proper as required by the 4th and 14th Amendments to the United States Constitution and Article I, sections 7 and 8 of the Tennessee Constitution[.]

We can gather from the proceedings in the trial court and the parties' appellate briefs that this question is meant to address the validity of Ms. Hill's consent to search the residence over Defendant's objection. As an initial matter, we note that even though the trial court denied the motion to suppress based on Defendant's lack of standing, this issue was "passed upon by the trial judge" as required by *Preston*. *See* 759 S.W.2d at 650. Specifically, the trial court found that if Defendant had not disclaimed his interest in the residence, then Ms. Hill's consent would not be valid as to him under *Georgia v. Randolph*, 547 U.S. 103 (2006). On the other hand, Defendant's contention on appeal that Ms. Hill's consent was invalid because she was illegally seized was not passed upon by the trial court and is outside the scope of the certified question. *See Preston*, 759 S.W.2d at 650.

Regardless of what we can gather from "prior petitions, orders, colloquy in open court or otherwise," we must determine whether the certified question, as framed, "clearly identif[ies] the scope and the limits of the legal issue reserved." *Id.* "Certified question[s] are overly broad when they mention a violation of a defendant's right but do not clearly outline the question beyond the right allegedly violated." *State v. William G. Barnett, Jr.*, No. M2013-01176-CCA-R3-CD, 2014 WL 1632080, at *5 (Tenn. Crim. App. Apr. 23, 2014), *no perm. app. filed*. As explained in *Preston*, when reserving "questions of law involv[ing] the validity of searches . . ., the reasons relied upon by [the] defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law." 759 S.W.2d at 650.

The second certified question in this case is overly broad. While Defendant narrows the question somewhat by the insertion of the word consent in parentheses, the question would still "'potentially require a complete dissertation of the law of search and seizure of which this [C]ourt is not willing to engage in absent specific boundaries

circumscribed by the [Defendant].'" *State v. Kale J. Sandusky*, No. M2008-00589-CCA-R3-CD, 2009 WL 537526, at *3 (Tenn. Crim. App. Mar. 4, 2009) (quoting *State v. Nicholas J. Johnson*, No. M2000-03162-CCA-R3-CD, 2001 WL 1356369, at *2 (Tenn. Crim. App. Nov. 6, 2001), *perm. app. denied* (Tenn. Apr. 8, 2002)), *perm. app. denied* (Tenn. Aug. 24, 2009). The question does not identify whose consent is being analyzed, whether that person has common authority over the residence to give consent, or whether that consent may be limited by the presence of a non-consenting co-resident. Without clearly identifying the scope and limits of the legal issue, the question does not meet the strict requirements of *Preston* and Rule 37. *See State v. Long*, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). Therefore, the second certified question is not properly before this Court.

### *Conclusion*

We hold that Defendant's first certified question of law with regard to his standing is dispositive. Because Defendant disclaimed his interest in the property, he lacked standing to challenge the subsequent search. Additionally, we hold the Defendant's second certified question is overly broad and is not properly before this Court. We affirm the trial court's ruling denying the motion to suppress.

_____
TIMOTHY L. EASTER, JUDGE